**UNITED STATES, Appellee,**

v.

**Wendell T. BLYE, Second Lieutenant
U.S. Army, Appellant.**

No. 67,564.
CM 9101465.

U.S. Court of Military Appeals.

Argued March 10, 1993. *

Decided May 13, 1993.

For Appellant: *Captain Paul H. Turney* (argued); *Colonel Robert B. Kirby* and *Captain Robin N. Swope* (on brief).

For Appellee: *Captain Steven M. Walters* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Daniel J. Dell'Orto, Captain Timothy W. Lucas* (on brief).

*Opinion of the Court*

COX, Judge:

On June 26 and July 2, 1991, appellant was tried by a military judge sitting as a

---

* Oral argument in this case was heard at the United States Military Academy at West Point, New York, as part of "Project Outreach." *See*

*United States v. Frazier,* 34 MJ 194, 195 n.1 (CMA 1992).

general court-martial. Pursuant to his pleas, appellant was convicted of one specification of willfully disobeying the lawful command of his superior commissioned officer; three specifications of housebreaking with intent to commit indecent assault; four specifications of indecent assault; and five specifications of breaking restriction, in violation of Articles 90, 130, and 134, Uniform Code of Military Justice, 10 USC §§ 890, 930, and 934, respectively. Contrary to his pleas, appellant was convicted of two specifications of assaulting a military policeman, in violation of Article 128, UCMJ, 10 USC § 928. Appellant was sentenced to dismissal, total forfeitures, and confinement for 6 years. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provides for a dismissal, confinement for 27 months, and total forfeitures. The Court of Military Review affirmed the findings and sentence.

At the time of the offenses, appellant was a newly-commissioned second lieutenant and a student in the Field Artillery School Officer Basic Course at Fort Sill, Oklahoma. The first incident occurred on February 2, 1991, when appellant, after drinking alcohol, went to Building 912, entered the room of a private first class, and with the intent to gratify his sexual desires, fondled the genitals of the sleeping male. Appellant fled when his victim awoke. Similar incidents occurred on March 6 and 13, 1991; on both dates, appellant entered Building 913 after drinking alcohol and fondled the genitals of sleeping male soldiers.

Following the March 13 offenses, appellant was apprehended by soldiers as he was fleeing the barracks. When the military police arrived, appellant was belligerent, repeatedly tried to leave, and had to be restrained. He used profanity toward the police and kicked one policeman. Appellant was placed in pretrial confinement until released by the magistrate and was placed on restriction with conditions[1], one of which was that appellant would not drink any alcoholic beverages.

On April 10, 11 and 12, appellant was seen off post at a sports bar. On April 12, he was apprehended and given a Breathalyzer which revealed a blood alcohol level of .05.

■ This Court specified the following issue for review:

WHETHER A MILITARY OFFICER CAN BE ORDERED NOT TO DRINK.[2]

At the outset, we note that this appears to be a seemingly innocuous case. Appellant pleaded guilty to the disobedience offense in question. However, it is an important case, because for over 30 years of military jurisprudence, orders "not to drink liquor" have been considered "so broadly restrictive of a private right of an individual" as to be "arbitrary and illegal." *United States v. Wilson*, 12 USCMA 165, 166–67, 30 CMR 165, 166–67 (1961).[3]

1. The parties stipulated at trial that
   [t]he accused was placed in pretrial confinement on 13 March 1991. He was released from pretrial confinement by the Fort Sill Military Magistrate on 19 March 1991. On 19 March 1991, the accused was placed on restriction by his commander, Captain Linda C. Dubois. The accused was restricted to the confines of Fort Sill, Oklahoma, except for the Basic Training and Advanced Infantry Training student areas. The accused was granted full access to military and civilian counsel to include the ability of the accused to seek and see civilian counsel off Fort Sill, Oklahoma. The accused was also ordered not to drink any alcoholic beverages.

2. We decline to consider whether appellant's guilty pleas bar him from raising illegality of

this order on appeal. *See United States v. Hilton*, 27 MJ 323, 325–26 (CMA 1989); Art. 45(a), Uniform Code of Military Justice, 10 USC § 845(a).

3. *United States v. Wilson*, 12 USCMA 165, 30 CMR 165 (1961), was more recently applied in *United States v. Roach*, 26 MJ 859 (CGCMR 1988). Roach, an 18–year–old Coast Guardsman who admittedly suffered from alcohol abuse, was given an order not to consume alcoholic beverages while on a short liberty pass in Key West, Florida. The United States Coast Guard Court of Military Review reversed his guilty plea to the charge of violating the order, finding as one basis for the holding:

Even in this era of heightened awareness of society's need to address alcoholism and the

It is important to compare this case with *Wilson* because they are strikingly similar. Airman Third Class Wilson confessed to stealing a tape recorder "while under the 'influence of alcohol.'" 12 USCMA at 165, 30 CMR at 165. He was "restricted ... to the billets" and ordered "not to indulge in alcoholic beverages." *Id.* at 166, 30 CMR at 166. Approximately 1 week later, Wilson was found in the billets under the influence of alcohol.

This appellant, a commissioned officer, was suspected of committing several offenses while under the influence of alcohol. Appellant's commander, exactly like Wilson's commander, gave him a broad order "not to drink any alcoholic beverages." Appellant was later found intoxicated at an off-base club.

The Government argues on appeal that there are aspects of this case which distinguish it from *Wilson*. For example, appellant is an officer; Wilson was enlisted. Appellant was ordered not to drink to protect potential victims; Wilson was given an order not to drink "for his protection and the best interests of the service." *Id.* There are other important distinctions. Wilson pleaded not guilty and contested the legality of the charges against him. *Id.* Appellant, on the other hand, pleaded guilty and admitted the legality of the order in his case. In *Wilson,* the order not to drink was redundant with an existing regulation which prohibited Wilson from consuming alcohol in the barracks. There was

no similar restriction as to the place where appellant consumed alcohol.

But, importantly, subsequent to commission of the offenses, appellant was placed in pretrial confinement. The order "not to drink any alcoholic beverages" was part and parcel of an order which was given subsequent to his release from pretrial confinement (by order of a military magistrate). This order placed him in a lesser form of restraint: pretrial restriction.

We hold today that a military member may be lawfully ordered not to consume alcoholic beverages as a condition of pretrial restriction if such order is reasonably necessary to protect the morale, welfare, and safety of the unit (or the accused); to protect victims or potential witnesses; or to ensure the accused's presence at the court-martial or pretrial hearings in a sober condition.

■ It is beyond cavil that a pretrial prisoner in a confinement facility may be lawfully denied the use of alcohol. We do not find it unduly restrictive on the personal liberty of any military member to deny use of alcohol as a condition of being released from pretrial confinement and placed upon restriction.

■ This is not to imply that every order given military members, even those restricted to a military post or base, not to drink alcohol is legal. As with every other military order, "[t]he order must relate to military duty, which includes all activities reasonably necessary to accomplish a mili-

---

abuse of alcohol, most would still consider that an order "not to consume 'alcohol'" interferes with private rights or personal affairs. Nevertheless, such an order may still be lawful if it serves a valid military purpose. *Id.* at 865.

Notwithstanding the fact that Roach affirmatively waived any claim that the order was unlawful, *id.* at 864, the Court of Military Review went on to find, for reasons similar to the following reasons set out in *Wilson, i.e.,* the order "was *for his own good* ... for his protection and the best interests of the service' and to *prevent something similar* ... [from] happening again' ( [12 USCMA at 166,] 30 CMR at 166, emphasis supplied)," that there was no valid military purpose for the order, hence it was unlawful. 26 MJ at 865.

Despite Roach's affirmative waiver at trial, this Court affirmed the decision of the Court of Military Review. *United States v. Roach,* 29 MJ 33 (CMA 1989). The majority decision did not address the military purpose of the order not to consume alcohol; rather, it decided the case on the alternative basis that the order violated a Coast Guard regulation relating to treatment of alcohol abusers. In *dicta,* the majority recognized that some orders not to drink may be lawful.

The holding today by the majority in this case does not hinge on whether drugs or alcohol can be controlled in the military by orders of a commander because we do believe that an appropriate military order can be used to control alcohol or drug abuse.

29 MJ at 36 n.2.

tary mission, or safeguard or promote the morale, discipline, and usefulness of members of a command and directly connected with the maintenance of good order in the service." Para. 14c(2)(a)(iii), Part IV, Manual for Courts–Martial, United States, 1984.

██ We need not go beyond the facts of this case to determine the scope of orders

not to consume alcohol.[4] Suffice it to say here, the order given to this alcohol abuser not to consume alcohol as a condition of pretrial restriction was a lawful order.[5]

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.

---

**4.** *But see United States v. Roach, supra* at 37 (Cox, J., dissenting).

**5.** Given the distinctions between this case and *United States v. Wilson, supra,* it may not be necessary to overrule *Wilson.* Nevertheless, to the extent that *Wilson* can be construed to prohibit an order under the circumstances found here, that aspect of *Wilson* is expressly overruled.