UNITED STATES, Appellee

v.

Malcolm M. MACK, Aviation Machinist's Mate Airman
U.S. Navy, Appellant

No. 06-0943

Crim. App. No. 200400133

United States Court of Appeals for the Armed Forces

Argued March 13, 2007

Decided June 19, 2007

EFFRON, C.J., delivered the opinion of the Court, in which
BAKER, ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel


For Appellant: Lieutenant Brian L. Mizer, JAGC, USN (argued).


For Appellee: Captain Roger E. Mattioli, USMC (argued);
Commander Paul C. LeBlanc, JAGC, USN (on brief).



Military Judge: J. S. Brady


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Chief Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of conspiracy to obstruct justice, breaking restriction (seven specifications), and wrongfully attempting to influence the testimony of a witness (three specifications), in violation of Articles 81 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 934 (2000). The sentence adjudged by the court-martial and approved by the convening authority included a dishonorable discharge, confinement for six months, hard labor without confinement for three months, and reduction to pay grade E-1. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings of guilty, reduced the dishonorable discharge to a bad-conduct discharge, and approved the balance of the sentence. United States v. Mack, No. NMCCA 200400133, 2006 CCA LEXIS 223 (N-M. Ct. Crim. App. Aug. 28, 2006) (unpublished).

On Appellant's petition, we granted review of the following issues:

    I.    WHETHER THE LOWER COURT ERRED BY HOLDING THAT THE MILITARY JUDGE'S DECISION TO SUBMIT THE ISSUE OF THE LAWFULNESS OF APPELLANT'S RESTRICTION ORDER TO THE MEMBERS WAS HARMLESS.

    II.   WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE THAT APPELLANT CONSPIRED WITH JOHN DOE TO OBSTRUCT JUSTICE WHERE THERE IS NO

EVIDENCE IN THE RECORD THAT JOHN DOE EVER EXISTED.

III. WHETHER APPELLANT WAS DENIED DUE PROCESS OF LAW WHERE THE LOWER COURT DECIDED APPELLANT'S CASE 1,830 DAYS AFTER HIS COURT-MARTIAL.

For the reasons set forth below, we affirm.

## I.  PRETRIAL RESTRICTION (ISSUE I)

### A.  BACKGROUND

#### 1.  The pretrial restriction order

A servicemember facing criminal charges may be subjected to various forms of pretrial restraint pending court-martial, including confinement, arrest, restriction, or conditions on liberty.  Rule for Courts-Martial (R.C.M.) 304(a).  A pretrial restriction order generally includes specific conditions designed to prevent additional criminal misconduct and maintain accountability of the accused.  R.C.M. 304(c) Discussion.  Various conditions may be ordered if they are "reasonably necessary to protect the morale, welfare, and safety of the unit (or the accused); to protect victims or potential witnesses; or to ensure the accused's presence at the court-martial or pretrial hearings."  United States v. Blye, 37 M.J. 92, 94 (C.M.A. 1993).  For example, the commander may order the servicemember to remain within specified limits, to report periodically to a specified official, and not to associate with

specified persons.  R.C.M. 304(a)(2); R.C.M. 304(b); R.C.M. 304(a) Discussion.

Appellant, who was under investigation for selling illegal drugs during an undercover operation, was placed in pretrial confinement for thirty-four days.  Subsequently, he was released after a reviewing officer determined that less restrictive forms of restraint would suffice.  Following his release from confinement, Appellant's commanding officer immediately placed him on restriction because of information that Appellant was dealing drugs on the military installation, both at his workplace and from his car.  The period of pretrial restriction lasted for 143 days.

The pretrial restriction order restricted Appellant to Marine Corps Air Station, New River, North Carolina.  The order also contained the following conditions:  (1) a requirement to muster at specified times during work days and at other specified times on non-work days; (2) a requirement to carry a log at all times that recorded his musters; (3) a prohibition on use of the telephone except for monitored calls with his wife and legal representative; (4) a limitation to supervised visits with his wife; (5) a prohibition on operating or riding in an automobile; (6) restriction to his barracks room during non-duty hours, with limited exceptions; (7) a prohibition on going to specified shopping, recreational, and entertainment venues on

4

the base, with limited exceptions for supervised visits; (8) a limitation on exercise to battalion activities; (9) a prohibition on wearing civilian clothing; (10) a prohibition on consumption of alcoholic beverages; and (11) a limitation to eating in the base mess hall, with a requirement that he check in and out with the staff duty officer.

2. Charges based upon violations of the pretrial restriction conditions

A servicemember who violates one or more of the conditions of pretrial restriction may be charged with an offense under the Uniform Code of Military Justice. See Manual for Courts-Martial, United States pt. IV, paras. 16, 102 (2005 ed.) (MCM). Appellant was charged with violating three of the conditions of restriction: (1) failure to muster; (2) riding in or driving a car; and (3) making phone calls to individuals other than his wife and lawyer. As noted in section I.A.4., infra, Appellant ultimately was convicted of violating two of the conditions: failure to muster and riding in or driving a car.

3. Sentence credit based upon the conditions of pretrial restriction

Pretrial restriction is not punishment and may not be used as such. R.C.M. 304(f). A person accused of a crime retains the presumption of innocence and may not be punished pending trial. Article 13, UCMJ, 10 U.S.C. § 813 (2000). If conditions of pretrial restraint are more rigorous than necessary to ensure

the presence of an accused at trial or to prevent additional misconduct, the accused may receive credit against the adjudged sentence. United States v. King, 61 M.J. 225, 227 (C.A.A.F. 2005); United States v. Stringer, 55 M.J. 92, 94 (C.A.A.F. 2001); see also Michael G. Seidel, Giving Service Members the Credit They Deserve: A Review of Sentencing Credit and Its Application, Army Law., Aug. 1999, at 10-14 (discussing credit for violations of Article 13).

In a pretrial motion, Appellant asserted that the conditions of his restriction order did not fulfill a legitimate military purpose and imposed illegal pretrial punishment in violation of Article 13. After conducting a hearing on the motion, the military judge provided a detailed ruling. The military judge found that the command had placed Appellant in pretrial confinement because of "the risk of flight of the accused, the detriment to the safety of the training command with drug distribution to students, and the potential for retribution against the confidential witness in the undercover operation." After reciting the circumstances involving Appellant's release from pretrial confinement and the ensuing order into pretrial restriction, the military judge concluded that the command "did not inten[d] to punish him by placing him in pretrial restriction upon his release from pretrial

confinement.  The concerns elicited in evidence were for legitimate nonpunitive government purposes."

Although he did not rule that the decision to place Appellant on pretrial restriction constituted an illegal order, the military judge determined that "the facts also bear out unduly rigorous circumstances during this period of pretrial restraint."  The military judge identified three aspects of the pretrial restriction order that supported his conclusion that the restriction involved "unduly rigorous circumstances." First, after noting that Appellant's wife was not a suspect, he concluded that the limitation of Appellant and his wife to supervised visitations was "not directly linked to a valid, governmental purpose and intruded on the sanctity of his marriage, a right which is often protected under a number of rights in the Constitution of the United States."

Second, the military judge concluded that the monitoring of Appellant's phone calls to his counsel "chilled his ability and freedom to speak in a protected environment under the attorney/client relationship, intruding upon [Appellant's] . . . Fifth and Sixth Amendment rights to counsel."

Third, the military judge concluded that "the terms of [Appellant's] restriction, particularly requirements which did not directly serve the purpose of ensuring his presence at trial, were unnecessary and unduly onerous."  The military judge

stated that the command "placed him in an area with persons serving punishment and persons stigmatized with pending discharges for misconduct."  In addition, "[o]ver [Appellant's] objections, and while other reasonable accommodations likely became available, he was restrained from the freedom of movements [sic] and unduly restricted from activities which serve no legitimate governmental purpose."  The military judge did not address specifically the two conditions of restriction that Appellant was convicted of disobeying -- the muster requirement and the prohibition on riding in or driving an automobile.

Based upon his conclusion that conditions more rigorous than necessary had been imposed on Appellant during his period of pretrial restriction, the military judge granted Appellant day-for-day credit for the 143 days that he spent on pretrial restriction.  See Stringer, 55 M.J. at 93 (credit given for onerous pretrial conditions).  In addition, the military judge awarded Appellant thirty-four days of sentence credit for the earlier time that he spent in pretrial confinement.  See United States v. Allen, 17 M.J. 126, 128 (C.M.A. 1984) (credit given for time spent in pretrial confinement).

4.  The defense motion to dismiss the charge of breaking
restriction

After the military judge granted sentence credit for the
Article 13 violation, and again at the close of the Government's
case-in-chief, Appellant moved to dismiss the charge of breaking
restriction and its specifications, contending that the
conditions of Appellant's restriction were unlawful.  As noted
in section I.A.2., supra, Appellant was charged with violating
three conditions of his restriction:  the requirement to muster,
the prohibition on riding in or driving a car, and the
limitation on making phone calls to individuals other than his
wife and lawyer.

The military judge denied the motion on the grounds that
the legality of Appellant's restriction presented a "mixed
question of law and fact" that he would submit for decision by
the members of the court-martial panel.  Prior to the panel's
deliberation on findings, the military judge instructed the
panel members on the elements of breaking restriction, see MCM
pt. IV, para. 102.b., and on the factors bearing on the legality
of the restriction, see R.C.M. 304.  The members acquitted
Appellant of breaking restriction by making telephone calls (two
specifications), but convicted him of breaking restriction by
failing to muster on specific occasions (five specifications)

and by riding in or driving a car during the period of

restriction (two specifications).

B.  THE ROLE OF THE MILITARY JUDGE IN DETERMINING THE LEGALITY
OF AN ORDER

When the legality of an order is at issue, the issue must

be decided by the military judge, not the court-martial panel.

See United States v. Deisher, 61 M.J. 313, 317 (C.A.A.F. 2005)

(citing Article 51(b), UCMJ, 10 U.S.C. § 851(b)(2000)); United

States v. New, 55 M.J. 95, 105 (C.A.A.F. 2001).  As we noted in

Deisher, when the defense moves to dismiss a charge on the

grounds that the charged order was not lawful, "the military

judge must determine whether there is an adequate factual basis

for the allegation that the order was lawful."  61 M.J. at 318.

We emphasized that if the military judge rules "that a specific

set of words would constitute a lawful order under a specific

set of circumstances, that is a preliminary ruling . . . [that]

does not relieve the prosecution of its responsibility during

its case-in-chief of proving beyond a reasonable doubt the facts

necessary to establish the elements of the offense."  Id.

On appeal, we consider the legality of an order under a de

novo standard of review.  Id. at 317.  If the military judge

erroneously submits the issue of legality to the members, we

consider on appeal whether a record has been established that

10

permits us to resolve the question of legality without further proceedings.  Id. at 319.

## C.  DISCUSSION

In the present case, the military judge erred by treating the legality of the restriction order as a mixed question of fact and law to be resolved by the members.  As a matter of law, the presence of factual questions did not relieve the military judge of his responsibility to decide, as a preliminary matter, whether the order in the charged offenses was lawful.  Id. at 318; see R.C.M. 905(d).

Appellant contends that the issue of legality was resolved at trial adverse to the prosecution when the military judge granted sentence credit on the grounds that the pretrial restriction violated the requirements of Article 13.  According to Appellant, the military judge's Article 13 ruling, which was not appealed, constitutes the law of the case, and should preclude de novo review of the legality of the order.

The record, however, does not support the defense contention that the military judge determined the pretrial restriction order to be void in its entirety.  The pretrial restriction order consisted of at least eleven separate conditions.  See section I.A.1., supra.  In the course of ruling on the defense motion for sentence credit under Article 13, the military judge commented on a number of specific conditions but

did not conclude that the order as a whole was invalid.  See section I.A.3., supra.  His act of submitting the issue of lawfulness to the members, while erroneous, underscores that he did not conclude as a matter of law that the order was unlawful in its entirety.  Under these circumstances, the law of the case doctrine does not require us to treat the military judge's decision to provide sentencing credit under Article 13 as a determination that every aspect of the pretrial restriction order was unlawful.

The restriction order in the present case does not involve conditions that are so closely integrated that they must stand or fall together.  Here, the conditions are sufficiently distinct that they may be evaluated separately for purposes of our de novo review of legality.  See Blye, 37 M.J. at 94-95 (considering legality of a condition of restriction under standards applicable to consideration of the lawfulness of an order).  Furthermore, the record does not involve the type of factual disputes that might give us pause about conducting a de novo review.  See Deisher, 61 M.J. at 318-19.

Only two of the pretrial restriction conditions resulted in convictions that are at issue in the present appeal -- the requirement to muster and the prohibition on riding in or driving a car.  Neither condition was relied upon expressly by

the military judge as a basis for providing sentence credit under Article 13.

The essential attributes of a lawful order include: (1) issuance by competent authority; (2) communication of words that express a specific mandate to do or not do a specific act; and (3) relationship of the order to a military duty. Id. at 317; MCM pt. IV, para. 14.c.(2)(a). "An order is presumed lawful, and the accused bears the burden of rebutting the presumption." Deisher, 61 M.J. at 317.

In the present case, the first two attributes -- issuance by a competent authority and the specificity of the communication -- are not at issue. Our focus is on the relationship between the condition at issue and a military duty.

Muster requirements are often imposed as a condition of pretrial restriction. See United States v. Hudson, 59 M.J. 357, 360 (C.A.A.F. 2004) (addressing a pretrial restriction order that included a muster provision); United States v. McCarthy, 47 M.J. 162, 163 (C.A.A.F. 1997) (addressing a pretrial restriction order that required twice-daily muster); United States v. Cherok, 22 M.J. 438, 439 (C.M.A. 1986) (holding that a pretrial restriction with hourly muster requirement was not so onerous as to constitute confinement). Muster serves the military's need for accountability of personnel and allows detainees to continue to work, attend appointments, participate in physical training,

13

and attend meals without the burden of constant supervision. Appellant has not rebutted the presumption of lawfulness by demonstrating that the muster requirement in the present case did not fulfill a military duty or that it was otherwise unlawful.

The prohibition against riding in or driving a car also was imposed because Appellant was suspected of selling drugs from cars and meeting potential drug customers in cars. His commander sought to prevent him from continuing to engage in drug sales from vehicles. This condition was imposed to ensure that Appellant remained on the installation, was available for trial, and did not engage in additional misconduct. Appellant has not rebutted the presumption of lawfulness by demonstrating that this condition did not fulfill a military duty or that it was otherwise unlawful.

In light of the foregoing considerations, we conclude under the circumstances of this case that the military judge's error in submitting the question of lawfulness of the conditions of restriction to the panel members was harmless. See United States v. Alameda, 57 M.J. 190, 199-200 (C.A.A.F. 2002).

14

## II.  CONSPIRACY TO OBSTRUCT JUSTICE (ISSUE II)

### A.  BACKGROUND

Appellant was charged with selling cocaine to Mr. D, a known drug dealer who was cooperating with Naval Criminal Investigative Service.  In addition, Appellant was charged with a number of related offenses concerning his interaction with Mr. D, including communicating three separate threats to kill Mr. D or his family if Mr. D testified at Appellant's court-martial, and conspiring with "John Doe" to obstruct justice by threatening to kill Mr. D.

At trial, the prosecution introduced the following evidence with respect to the charged conspiracy and related threats.  Mr. D, the cooperating witness, lived with his mother.  During the two months before Appellant's court-martial, Mr. D's mother received three telephone calls and a package threatening violence if Mr. D testified at Appellant's court-martial.  The first two telephone calls were traced to Appellant's home phone number.  The package was addressed to Mr. D and contained two 9mm bullets with Mr. D's name attached.  The package included the following note:

> Don't be stupid!  They can't and won't protect you.
> Especially with people like [various names] . . .
> after you.  We hear they've got about $10,000 for your
> head.  But, that's the least of your worries.  If you
> show to F[. . .] over my partner, I promise that ten-
> grand will be collected ASAP.  We'll also see to it
> that your address and number be well known.  So be

15

smart . . . <u>live</u> and let <u>live</u>, or <u>BE A DEAD HERO</u>!!!!
They've used you, don't let them get you <u>KILLED</u>!!!!!.

Subsequently, Mr. D's mother received a third telephone call, which she recorded on her answering machine. She testified that a male voice asked "Did you get my mail?" The male voice also said "don't be brave" and used the word "dead." Then she heard what appeared to be the sound of a person taking the phone away from the male caller, and a female voice saying "Not on the phone . . . Don't say that." The female voice then spoke into the phone, saying "Bitch don't call. My number is 404-***-*****." Mr. D testified that he listened to the recorded message and identified the male caller as Appellant. Mr. D stated that the threats made him feel "uneasy" about testifying at Appellant's court-martial.

The prosecution argued that the conspiracy charge was supported by the evidence that someone mailed the threatening package to Mr. D's mother on Appellant's behalf, and by the evidence that the third telephone call was made by Appellant and an unknown female asking whether the mail was received, accompanied by further threats.

With respect to the conspiracy charge, the military judge instructed the members that they must be convinced beyond a reasonable doubt that: (1) Appellant entered into an agreement with an unknown person to commit an obstruction of justice; and

(2) while the agreement continued to exist, Appellant, the unknown person, or both threatened to kill Mr. D or his family if he testified against Appellant at the court-martial. See MCM pt. IV, para. 5.b. (elements of conspiracy); MCM pt. IV, para. 96.b. (elements of obstruction of justice).

The panel members convicted Appellant of conspiring with "John Doe" to obstruct justice by threatening Mr. D. The members also convicted Appellant of three specifications of communicating a threat, based on the two telephone calls traced to Appellant's phone and the package containing the note and bullets.

## B. LEGAL SUFFICIENCY

Appellant contends that the evidence was insufficient as a matter of law to show that he conspired with another person to commit the offense of obstruction of justice. Appellant points out that the evidence did not show that any person other than Appellant mailed the package with the threatening note. In that regard, the findings indicated that Appellant mailed the package and made the first two threatening phone calls.

Appellant further contends that the existence of a conspiracy with another person could not be established by the third telephone call to Mr. D's mother, which featured the voices of both Appellant and an unknown female. Appellant asserts that this evidence is insufficient because he was

17

charged with conspiring with "John Doe," not a female, and because the content of the third telephone call did not demonstrate a prior conspiracy.

The standard for determining the legal sufficiency of evidence supporting a guilty verdict is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); see United States v. Turner, 25 M.J. 324, 324-25 (C.M.A. 1987).

The prosecution is not required to establish the identity of co-conspirators or their particular connection with the criminal purpose. MCM pt. IV, para. 5.c.(1). The agreement in a conspiracy need not be in any particular form or manifested in any formal words. MCM pt. IV, para. 5.c.(2); United States v. Cobb, 45 M.J. 82, 84 (C.A.A.F. 1996). It is sufficient if the agreement is "merely a mutual understanding among the parties." Cobb, 45 M.J. at 85 (citing United States v. Barnes, 38 M.J. 72, 75 (C.M.A. 1993)) (quotation marks omitted). The existence of a conspiracy may be established by circumstantial evidence, including reasonable inferences derived from the conduct of the parties themselves. Id.; MCM pt. IV, para. 5.c.(2).

Considering the evidence in the light most favorable to the prosecution, a rational factfinder could have found beyond a

reasonable doubt that Appellant and the female caller had an agreement to threaten Mr. D with violence and intimidate him from testifying at Appellant's court-martial.  The members could have concluded that the woman recorded on the third telephone call was coaching Appellant in an attempt to make their threats credible.  She was heard instructing him not to mention the package.  The members could have determined that the female listed a nonexistent telephone number to confuse Mr. D's mother or to obscure the caller's identity.  Moreover, the woman threatened Mr. D's mother directly by saying, "Bitch, don't call me."  This evidence, taken together, could have led a rational factfinder to the conclusion that Appellant and the unknown female were working together to frighten Mr. D from testifying against Appellant at his court-martial.  The fact that the co-conspirator in this case was not a male "John Doe" as alleged in the specification to Charge I, but instead was a female, carries no legal significance.

We conclude that the third threatening telephone call to Mr. D's mother -- in light of the package and the threatening note mailed to her -- provided sufficient evidence for a rational factfinder to determine that Appellant conspired with an unknown female to obstruct justice by threatening harm to Mr. D or his family.  See Jackson, 443 U.S. at 319.  In view of our conclusion, we need not determine whether any of the other

19

evidence of threatening actions provided legally sufficient evidence of a conspiracy.


### III.  POST-TRIAL AND APPELLATE DELAY

We review de novo Appellant's claim that he was denied his due process right to a speedy post-trial review and appeal. United States v. Moreno, 63 M.J. 129, 135 (C.A.A.F. 2006).  The court below noted that the post-trial processing of the case involved unreasonable and unexplained delay, and provided relief under the court's sentence appropriateness authority by reducing the dishonorable discharge to a bad-conduct discharge.  See United States v. Tardif, 57 M.J. 219, 223-24 (C.A.A.F. 2002); Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000).

With respect to the overall post-trial and appellate period, we review a claim of a due process violation under the test set forth in Moreno, 63 M.J. at 135-36.  Assuming an unreasonable length of time and a timely assertion of the right to speedy appellate review, Appellant has not established either that he was denied timely review of a meritorious appellate issue or that he otherwise suffered cognizable prejudice.  Under these circumstances, we decline to provide relief beyond that granted at the court below under Tardif.  See United States v. Allison, 63 M.J. 365, 370 (C.A.A.F. 2006).

IV.  CONCLUSION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.