UNITED STATES, Appellee

v.

Sabrina D. HARMAN, Specialist
U.S. Army, Appellant

No. 08-0804

Crim. App. No. 20050597

United States Court of Appeals for the Armed Forces

Argued October 14, 2009

Decided February 4, 2010

STUCKY, J., delivered the opinion of the Court, in which EFFRON, C.J., and BAKER, ERDMANN, and RYAN, JJ., joined.


Counsel


For Appellant:  Frank J. Spinner, Esq. (argued); Captain Jennifer A. Parker (on brief); Major Grace M. Gallagher.

For Appellee:  Captain Stephanie R. Cooper (argued); Colonel Norman F. J. Allen III, Lieutenant Colonel Martha L. Foss, and Major Lynn I. Williams (on brief); Major Lisa L. Gumbs and Major Teresa T. Phelps.

Military Judge:  James Pohl


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Harman, No. 08-0804/AR

Judge STUCKY delivered the opinion of the Court.

Appellant, an Army reservist assigned as a guard at Abu Ghraib prison in Iraq in 2003, was convicted of various offenses concerning the maltreatment of detainees. We granted review to consider whether the evidence is legally sufficient to sustain the findings of guilty. For the reasons that follow, we find no error and affirm.

I.

Contrary to her pleas, Appellant was convicted at a general court-martial, with officer and enlisted members, of conspiracy to maltreat subordinates; dereliction of duty by failing to protect Iraqi detainees from abuse, cruelty, and maltreatment; and four specifications of maltreatment under Articles 81, 92, and 93, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 892, 893 (2006). Appellant was sentenced to a bad-conduct discharge, confinement for six months, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence, with slight modifications to the forfeitures and confinement credits. The United States Army Court of Criminal Appeals (CCA) affirmed. United States v. Harman, 66 M.J. 710, 720 (A. Ct. Crim. App. 2008).

Appellant's convictions stem from incidents at Abu Ghraib prison in Iraq where she served as a guard in the fall of 2003.

2

The first incident took place on November 4, 2003.[1] Appellant admitted to investigators that she took a new detainee, who had been placed on a box with a hood over his head, affixed his fingers with wires, and told him he would be electrocuted if he fell off the box. Appellant then photographed the victim who stood on the box for approximately an hour. Appellant admitted it was her idea to attach these wires, though military intelligence officials had not asked her or her colleagues to do so. Appellant thought this was permissible because "[w]e were not hurting him. It was not anything that bad."

On November 7, 2003, more detainees were securely transferred to Appellant's area with handcuffs and sandbags over their heads so they could pose no harm. Other soldiers took it upon themselves to "discipline" the detainees by taking the detainees' clothes off and forcing them into a human pyramid, stepping on their hands and toes, and punching a hooded detainee so hard that he needed medical treatment. Appellant admitted in her sworn statement that she observed what was taking place, retrieved her digital camera, and returned to join the soldiers. Once there, she took numerous pictures, wrote "I'm a rapeist [sic]" on a detainee's naked thigh, and posed in front of the nude pyramid of detainees while smiling and giving a "thumbs up"

---

[1] Appellant was acquitted of another charge arising from an earlier incident on October 25, 2003.

sign.  Appellant's colleagues described their collective mood as "[j]ust laughing and joking."  Another servicemember reported the abuse.  Later, Appellant told an investigator "I don't think the human pyramid was wrong, nor [my colleague] posing like he was going to hit the prisoner."  But she also acknowledged that she was "sure it hurt" to be subject to these measures. Appellant did not report any of these incidents, although she had earlier expressed mixed feelings about mistreatment of detainees.[2]  Two soldiers reported some of these incidents, and on January 12, 2004, one of them turned over digital images of the incidents.

## II.

This Court reviews questions of legal sufficiency de novo as a matter of law.  United States v. Wilcox, 66 M.J. 442, 446 (C.A.A.F. 2008).  The test for legal sufficiency is "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Mack, 65 M.J. 108, 114 (C.A.A.F. 2007) (quoting

---

[2] In an October 20, 2003, letter to a former roommate, Appellant claimed she first thought such incidents were "funny then it hit me, that's a form of molestation.  You can't do that."  She added that "[t]he only reason I want to be there is to get the pictures to prove the US is not what they think. . . . What if that was me in their shoes. . . . Both sides of me think it's wrong."

4

Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  We affirm the decision of the lower court.

## A.  Conspiracy

Appellant argues that her conspiracy conviction was legally insufficient because she had no intent to conspire and because intent cannot be inferred from her "thumbs up" sign.  Under Article 81, UCMJ, conspiracy requires:  "'(1) That the accused entered into an agreement with one or more persons to commit an offense under the code; and (2) That, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused or at least one of the co-conspirators performed an overt act for the purpose of bringing about the object of the conspiracy.'"  United States v. Whitten, 56 M.J. 234, 236 (C.A.A.F. 2002) (quoting Manual for Courts-Martial, United States pt. IV, para. 5.b (2000 ed.) (MCM)).  Conspiracy "need not be in any particular form or manifested in any formal words," rather "[i]t is sufficient if the agreement is 'merely a mutual understanding among the parties.'"  Mack, 65 M.J. at 114 (citations omitted).  "The existence of a conspiracy may be established by circumstantial evidence, including reasonable inferences derived from the conduct of the parties themselves."  Id. (citations omitted).

Appellant's conduct is legally sufficient for a conspiracy conviction because she actively participated in the abuse and

5

encouraged others to do so.  As the CCA rightly concluded, Appellant's "smiling face, when seen with the 'thumbs up' hand signals, shows approval and encouragement to her co-conspirators as they maltreated the prisoners.  An inference that she was joining their purpose is justified."  Harman, 66 M.J. at 715. Furthermore, Appellant freely chose to participate in abuse and, in fact, voluntarily left to retrieve her camera so she could return to join and photograph the abuse.  Appellant's previous letter to her roommate did not alter the intent manifested during the course of the abuse.  Her direct involvement and obvious approbation, combined with her jokes and failure to stop or report the abuse, further support a "reasonable inference[]" of conspiracy "derived from the conduct of the parties themselves."  Mack, 65 M.J. at 114 (citations omitted).

## B.  Dereliction of Duty

Appellant was convicted of dereliction of duty for failing to perform her duty to protect Iraqi detainees from abuse, cruelty, and maltreatment, in violation of Article 92, UCMJ. Appellant now argues those convictions were legally insufficient and emphasizes that she was not properly trained.  Willful dereliction of duty requires:  "'(a) That the accused had certain duties; (b) That the accused knew or reasonably should have known of the duties; and (c) That the accused was willfully derelict in the performance of those duties.'"  United States v.

6

Pacheco, 56 M.J. 1, 3 (C.A.A.F. 2001) (quoting MCM pt. IV, para. 16.b.(3)).

Appellant's participation goes beyond mere acquiescence or negligent dereliction of duty:  she actively and willingly participated in attaching wires to a detainee, writing "rapeist" on a detainee's naked thigh, taking photos, and encouraging others' abuse.  Appellant received training in the care, custody and control of detainees as well as in the basic requirements of the Geneva Conventions regarding their treatment.  Appellant does not allege that she was unaware of her fundamental duty to care for and protect detainees.[3]  Appellant did not require specialized training to know that her actions were wrong, as evidenced by her own admissions as well as her colleagues' decisions to report the abuses.  Appellant failed in her duty to protect the detainees, and her conviction was legally sufficient.

### C.  Maltreatment

Appellant was convicted of four specifications of maltreatment for photographing, placing electrodes on, and

---

[3] Appellant's letter to her roommate, supra note 2, shows she appreciated the wrongfulness of her misconduct.  The letter also undermines Appellant's simultaneous arguments that she was untrained to recognize maltreatment and that she was really just trying to document and stop abuse.

writing "rapeist" on detainees, in violation of Article 93, UCMJ.  Appellant argues that no detainee suffered harm from her actions since none of them was aware of her photographs or felt pain from the wires.  Maltreatment requires:  "(1) That a certain person was subject to the orders of the accused; and (2) That the accused was cruel toward, or oppressed, or maltreated that person."  United States v. Springer, 58 M.J. 164, 171 (C.A.A.F. 2003) (quoting MCM pt. IV, para. 17.b.).  Unlike in United States v. Smith, __ M.J. __ (C.A.A.F. 2010), Appellant does not assert that the detainees were not subject to her orders.  There is "no need to show actual harm, rather 'it is only necessary to show, as measured from an objective viewpoint in light of the totality of the circumstances, that the accused's action reasonably could have caused physical or mental harm or suffering.'"  Id. at 171-72 (quoting United States v. Carson, 57 M.J. 410, 415 (C.A.A.F. 2002)).

In this case, the objective standard of harm is met for all four specifications:  as the CCA correctly found, "[n]o reasonable detainee would want to be abused and, more importantly here, would wish his abusers to record this pointless, humiliating conduct."  Harman, 66 M.J. at 717.  At least one detainee was aware he was being photographed at the time of the incidents.  It was reasonable for the military judge to find that one detainee would have feared electrocution when

8

guards explicitly told him he would be electrocuted if he fell off the box, irrespective of whether the wires were actually electrified.  It is similarly reasonable that the military judge concluded another detainee would suffer from having "rapeist" capriciously written on his leg while lying partially naked, hooded, and bound.  Appellant's convictions were legally sufficient.

## III.

The decision of the United States Army Court of Criminal Appeals is affirmed.