# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, CAMPANELLA, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant MICHAEL J. PAULINO**
**United States Army, Appellant**

ARMY 20160388

Headquarters, Fort Bragg
Christopher T. Fredrikson, Military Judge (first arraignment)
Thomas E. Brzozowski, Military Judge (second arraignment & trial)
Colonel Jeffrey C. Hagler, Staff Judge Advocate (pretrial)
Lieutenant Colonel William E. Mullee, Staff Judge Advocate (post-trial)

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA; Major Julie L. Borchers, JA; Captain Michael A. Gold, JA (on brief); Colonel Mary J. Bradley, JA; Major Julie L. Borchers, JA; Captain Steven J. Dray, JA (on reply brief).

For Appellee: Lieutenant Colonel Eric K. Stafford, JA; Captain Austin L. Fenwick, JA; Captain Joshua Banister, JA; Captain KJ Harris, JA (on brief).

26 April 2018

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHASBERGER, Judge:

Appellant challenges his convictions of larceny and attempted larceny on two separate grounds.[1] First, appellant asserts the findings of guilty are legally and factually insufficient. Regarding the larceny specifications, appellant claims no larceny was committed because the bank created a creditor-debtor relationship. Regarding the attempted larceny charge, he claims there is no evidence to satisfy the "overt act" requirement for an attempted offense. With respect to the larceny specifications, we disagree with appellant's characterization of the offense and the evidence. With respect to the attempted larceny charge we agree with appellant that

---

[1] Appellant raises a third assignment of error based on post-trial delay and personally submits matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which, after due consideration, merits no discussion or relief.

the record is factually insufficient. Second, appellant argues the military judge erred by denying the defense's challenges for cause against seven of the panel members. We disagree.

An officer and enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of attempted larceny and two specifications of larceny, in violation of Articles 80 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 921 (2012). The panel sentenced appellant to a bad-conduct discharge, total forfeitures of all pay and allowances, and a reduction to the grade of E-1. The convening authority disapproved the forfeitures, but approved the bad-conduct discharge and the reduction to the grade of E-1.

## BACKGROUND

### A. The Larcenies

In the fall of 2014, appellant was having financial difficulties. To pay his $200.00 telephone bill, his friend and coworker, Corporal (CPL) JP, loaned him money. To pay the bill directly, CPL JP gave appellant his United Services Automobile Association (USAA) account information and telephone.

A few weeks later, CPL JP asked appellant to return his money. Appellant did not have the money but told CPL JP he knew a way to get it. All appellant needed was for CPL JP to give him his banking information, including his username, password, and personal identification number (PIN). Appellant told CPL JP he knew someone who worked at USAA in Texas and could deposit fake checks into CPL JP's USAA account. Then, taking advantage of a USAA mobile banking[2] policy, CPL JP could immediately withdraw the money and give it to appellant. Appellant would then split the funds with the depositor and pay CPL JP back. Corporal JP agreed, giving appellant the necessary information to enable someone to access his account to deposit a check.

A few hours later, appellant told CPL JP his contact had deposited a check and now they needed to withdraw the funds. The two spent the next several hours attempting to withdraw $4,983.00. After visiting multiple automated teller machines and driving to several Walmarts, they were successful. Appellant gave CPL JP $300.00 (repaying the $200.00 loan and $100.00 for participating in the scheme).

The next day, appellant told CPL JP another check had been deposited in CPL JP's account. As both appellant and CPL JP were unable to leave work,

---

[2] USAA has a mobile banking application where account holders may deposit a check by submitting a photograph of the endorsed check. Although the check might need several days to clear, USAA policy is make the funds immediately available.

appellant told CPL JP to transfer the money to CPL JP's wife's account and have her withdraw the money and bring it to them. Corporal JP made two transfers totaling $4,900.00 to his wife's account, and his wife brought the money from the first transfer over that day. Corporal JP gave the envelope to appellant who gave a few hundred dollars to CPL JP and kept the rest.

On 24 October, CPL JP's wife brought the rest of the money to her husband at work. Again, CPL JP gave the money to appellant, who gave him $300.00 and kept the rest. Appellant told CPL JP to reset his username, password, and PIN so no one else could access the account. That same day, appellant's contact deposited a third check for just under $5,000.00 into CPL JP's account. The money from the third check was not withdrawn.

The next day, CPL JP attempted to make a purchase with his USAA debit card, but the transaction was denied. When CPL JP called USAA, he was informed his account was overdrawn by $10,000.00. He then called appellant and informed him about the situation. Appellant instructed him to say his account had been hacked. He further threatened CPL JP by asserting he would tell everyone that CPL JP's wife concocted the scheme since she was on the security cameras withdrawing the money.

Corporal JP went to the Criminal Investigation Command and reported appellant had stolen $10,000.00 from him. During the course of the investigation, CPL JP lied repeatedly about his involvement in the scheme. Eventually, CPL JP admitted he was a knowing participant.

*B. Challenges for Cause*

The convening authority appointed twelve panel members. During group voir dire, nine of the twelve members stated they previously used a smartphone application to deposit checks, ten of the twelve members stated they banked with USAA, and six of the twelve members used USAA as their primary bank. Additionally, several members had been victims of financial crimes and other members had taken courses or training in law or law enforcement.

At the close of voir dire, the defense raised three individual challenges for cause, followed by a general challenge for cause against the members who banked with USAA.[3] The defense asserted USAA membership should be generally

---

[3] The defense raised individual challenges for cause against Lieutenant Colonel (LTC) BM, Major (MAJ) CB, and Sergeant Major (SGM) TB. Regarding MAJ CB, the main reasons the defense challenged him for cause were based on his status as a

(continued . . .)

3

disqualifying because USAA is the named victim and USAA is a member-owned organization. As a result, the panel members that bank with USAA are members of the organization that has potentially been wronged and, therefore, the defense "believe[d] there is some sort of implied bias for that."

Regarding USAA membership, the military judge found that even considering the mandate to liberally grant challenges, merely being a USAA member does not rise to the level of implicating either actual or implied bias.

**LAW AND DISCUSSION**

*A. Legal and Factual Sufficiency*

Article 66(c), UCMJ, establishes our statutory duty to review a record of trial for legal and factual sufficiency de novo. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). Under Article 66(c), UCMJ, we may affirm only those findings of guilty that we find correct in law and fact and determine, should be affirmed based on the entire record. *Id.* The test for legal sufficiency "is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Mack*, 65 M.J. 108, 114 (C.A.A.F. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). When applying this test, we are "bound to draw every reasonable inference from the record in favor of the prosecution." *United States v. Craion*, 64 M.J. 531, 534 (Army Ct. Crim. App. 2006) (citations omitted). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [*we are*] *convinced of appellant's guilt beyond a reasonable doubt.*" *Walters*, 58 M.J. at 395 (citing *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). In weighing factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The essential elements of the specification of larceny are: that the appellant wrongfully took, obtained or withheld property from the owner; the property belonged to a certain person; the property was of some value; and that the taking was with the intent to permanently deprive or defraud another person of the use and

---

(. . . continued)

military police officer and his USAA membership. The military judge found MAJ CB had never acted in a law enforcement capacity and his work with the military police was in a non-investigative capacity. The military judge denied the challenges for cause against LTC BM and MAJ CB, but granted the challenge regarding SGM TB. The government exercised its preemptory challenge against MAJ SC and the defense used their preemptory challenge against LTC BM.

benefit of the property. *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 46.b.(1). In addition, to be found liable as an aider or abettor, the government must prove appellant assisted, encouraged, advised, instigated, counseled, commanded, or procured another in the commission of the offense, and that they shared in the criminal purpose or design. *MCM*, pt. IV, ¶ 1.b.(2)(b).

On appeal, appellant claims he did not steal anything. Specifically, appellant argues that because the checks had not cleared, the money in the account was a debt, and debts cannot be stolen. Appellant's argument is hard to square with the envelopes of cash he received.

There is ample evidence that on two occasions appellant and CPL JP knowingly had fake checks deposited in CPL JP's USAA account, and based on those deposits withdrew USAA's money. Appellant's role was paramount as he both suggested the scheme and had the contact to deposit the worthless checks. Further, appellant received most of the funds that were stolen. Appellant argues this does not constitute larceny because, at the time of the withdrawal, USAA was in effect lending CPL JP the money until the check cleared. We find this argument unpersuasive. Appellant obtained funds that belonged to USAA through a scheme that began with providing CPL JP's account information to his contact and ended with appellant telling CPL JP to say his account was hacked.

While the evidence clearly shows appellant committed the two specifications of larceny, the same cannot be said of the attempted larceny. The defense alleges and the government concedes the record is factually insufficient with regard to the charge of attempted larceny. We agree.

One of the essential elements of attempt is that appellant committed a "certain overt act" that was a substantial step towards the commission of the larceny. *MCM*, pt. IV, ¶ 4.b.(1). At trial the government alleged the overt act was appellant and CPL JP discussing the check being deposited in CPL JP's account. The testimony at trial does not support this finding. Corporal JP denied that appellant approached him about a third check, and there was no evidence to the contrary. In fact, prior to the third check the evidence shows appellant counseled CPL JP to change his account information so no one would be able to access the account. Therefore, we find the Specification of Charge I is legally and factually insufficient.

## B. Challenges to the Panel

At trial appellant challenged three panel members for actual and implied bias and then challenged the seven other panel members who banked with USAA for actual bias. The sole basis was being a member of USAA.

Actual bias is a question of fact to be decided by the trial judge on the basis of the responses of the member and any other evidence presented at the court-martial. *United States v. Woods*, 74 M.J. 238, 243 (C.A.A.F. 2015). The test for implied bias is objective, viewing the circumstances through the eyes of the public and focusing on the perception or appearance of fairness. *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010). "We look to determine whether there is 'too high a risk that the public will perceive' that the accused received less than a court composed of fair, impartial, equal members." *United States v. Moreno* 63 M.J. 129, 134 (C.A.A.F. 2006) (citing *United States v. Wiesen*, 56 M.J. 172, 176 (C.A.A.F. 2001)).

There is no basis for us to disturb the trial judge's finding that the panel members exhibited no actual bias. The defense questioned the panel members and did not elicit any responses that would suggest their membership in USAA would cause them to have preconceived notions regarding appellant. The trial judge was able to gauge their responses and assess their demeanor and sincerity. We conclude the trial judge did not abuse his discretion in denying the challenges for cause on actual bias grounds.

We also conclude the trial judge did not err in refusing to grant the challenge against these members on the basis of implied bias. The trial judge clearly articulated his consideration of the liberal grant mandate in his rejection of the challenge on both actual and implied bias grounds. Thus, we grant more deference to his decision than we would if he had failed to articulate his consideration of this principle.[4]

To conclude that merely being a member of USAA would make the public question whether appellant received a fair trial is farfetched. It would be akin to finding that a panel member could not sit on a court-martial when the Army is the victim. When a case involves theft of military equipment, soldiers sit on the panel even though their employer is the victim. One could argue that having equipment they need in combat is more likely to have an impact on the individual panel member than a $10,000.00 theft from a multi-billion dollar institution. Similarly, for cases brought under Article 134, UCMJ, alleging that conduct was service discrediting, we allow soldiers to serve as panel members even as the alleged behavior would by definition cause shame and approbation to the service of which they are a member.

---

[4] The standard for reviewing rulings on challenges involving implied bias is "less deferential than abuse of discretion, but more deferential than de novo review." *Moreno*, 63 M.J. at 134. Where a military judge has addressed implied bias by applying the liberal grant mandate on the record, that military judge will accordingly be granted "more deference on review than one that does not." *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007).

That is not to say there could never be a case where being a member of a financial institution could lead to actual or implied bias, but appellant has brought forth no facts that would lead to such a conclusion in this case.  Therefore, we find the military judge did not abuse his discretion by denying appellant's challenges for cause against any of the panel members.

### CONCLUSION

On consideration of the entire record, the findings of guilty of the Specification of Charge I and Charge I are set aside, and Charge I is dismissed.  The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principles of United States v. Winckelmann, 73 M.J. 11, 15-16 (C.A.A.F. 2013), and United States v. Sales, 22 M.J. 305, 307-08 (C.M.A. 1986), the sentence is AFFIRMED.  All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

Senior Judge BURTON and Senior Judge CAMPANELLA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7