IN THE CASE OF


UNITED STATES, Appellee

v.

Christopher D. DEISHER, Airman Basic
U.S. Air Force, Appellant

No. 04-0555

Crim. App. No. 35143

United States Court of Appeals for the Armed Forces

Argued February 9, 2005

Decided August 19, 2005


EFFRON, J., delivered the opinion of the Court, in which GIERKE,
C.J., and ERDMANN, J., joined. CRAWFORD and BAKER, JJ., each
filed a separate dissenting opinion.


Counsel

For Appellant: Colonel Carlos L. McDade (argued); Major Andrew
S. Williams (on brief).


For Appellee: Major Steven R. Kaufman (argued); Lieutenant
Colonel Robert V. Combs, Lieutenant Colonel Gary F. Spencer, and
Major Lane A. Thurgood (on brief).



Military Judge: Steven A. Hatfield



THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Deisher, No. 04-0555/AF

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of officer members, Appellant was convicted, pursuant to mixed pleas, of wrongful use of a controlled substance (four specifications) and failure to obey a lawful order, in violation of Articles 112a and 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 892. He was sentenced to a bad-conduct discharge, confinement for ten months, and forfeiture of all pay and allowances. The convening authority approved the sentence, and the United States Air Force Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

The present appeal concerns the responsibility of a military judge to determine the lawfulness of an order.[*] For the reasons set forth below, we conclude that the military judge erred by treating an issue of law, the legality of an order, as a question of fact to be decided by the court-martial panel, and that the error was prejudicial.

I. BACKGROUND

A. THE MOTION TO DISMISS THE CHARGE

The pertinent charge alleged that Appellant failed to obey a lawful order from a Security Forces Investigator, Staff Sergeant (SSgt) Hazen, to have no contact with Airman (Amn) Pennington. According to the prosecution, the investigator

2

issued the order in the aftermath of an altercation between Appellant and Amn Pennington.

In a pretrial session, defense counsel moved to dismiss the charge on the ground that the communication from the investigator to Appellant did not have the legal attributes of a lawful order. The motion was litigated on the basis of two exhibits: the memorandum prepared by SSgt Hazen a month after the incident, and a summary of SSgt Hazen's subsequent testimony at the pretrial investigation hearing under Article 32, UCMJ, 10 U.S.C. § 832 (2000). The exhibits reflect the investigator's testimony that he gave Appellant a no-contact order on more than one occasion, although he could not recall the exact words communicated to Appellant. According to the investigator, a senior airman was present on two occasions, and Appellant's first sergeant was present on one occasion. The investigator did not know whether Appellant understood the order in view of his "mental state," but he stated that Appellant acknowledged the order. The order had no expiration date, and it was not reduced to writing.

In support of the motion to dismiss the charge, defense counsel argued that the investigator's communication to Appellant did not possess the attributes of a lawful order. According to defense counsel: (1) the communication lacked the requisite clarity of a lawful order; (2) the communication was

3

deficient because it did not establish a definite duration for the alleged no-contact order; and (3) the alleged order exceeded the investigator's authority because it did not have the approval of Appellant's chain of command.  As authority for these arguments, defense counsel cited a number of cases addressing the contours of a lawful order, including United States v. Hill, 49 M.J. 242 (C.A.A.F. 1998), and United States v. Womack, 29 M.J. 88 (C.M.A. 1989).  The prosecution, in response, argued that a lawful order had been issued, relying primarily on the circumstances surrounding the alleged assault, the need for a no-contact order in the aftermath of the incident, and the role of a no-contact order in protecting the victim of the alleged assault and the good order of the service.

After discussing the substance of the order, the prosecution stated that the issue of legality should be resolved by the court-martial panel rather than the military judge. According to the prosecution, "if the lawfulness of the order is questioned, then that would be an issue -- it would be a fact issue for a panel."

Defense counsel disagreed with the prosecution's view that the defense had raised factual questions that should be resolved by the panel.  According to defense counsel, the responsibility for addressing the issue was vested in the military judge, who was required "to apply the facts to the law."

4

When the military judge suggested that the defense had raised a factual question -- "whether or not the order was even given" -- defense counsel emphasized that the military judge had identified only one of the pertinent questions.  Defense counsel noted that the factual existence of an order constituted only one aspect of the case, and that the motion to dismiss involved broader questions of law, requiring the military judge to address the uncertainty as to the content of the order, the indefinite duration of the order, and the issue of whether the alleged order was approved by Appellant's command.

The military judge took the issue under advisement. Subsequently, he issued a written ruling rejecting the defense motion to dismiss the charge on the following grounds:

> Based on the proffered facts, the court cannot find as a matter of law the alleged order was unlawful.  The defense motion is essentially an argument that the evidence is insufficient to establish either that an order was given or that it was lawful. These are questions of fact for the members to determine.

## B. TRIAL PROCEEDINGS

During trial on the merits, the prosecution relied primarily on the testimony of the investigator, SSgt Hazen, to prove that the charged order had been communicated to Appellant. SSgt Hazen testified that he was one of several persons investigating the altercation between Appellant and Amn

Pennington. Based upon witness statements indicating that Appellant might have used Valium without a prescription, SSgt Hazen and another investigator transported Appellant to the medical clinic for a drug test.

SSgt Hazen testified that the no-contact order was first issued to Appellant while they were in the car, accompanied by Amn Lewis, who was also assigned to the investigation. SSgt Hazen said that he could not recall the specific words of the order, noting that "we didn't talk very much, especially on the way there. It was just him worried about what's going to happen to him." SSgt Hazen added that he told Appellant: "Let's get this behind you. Don't worry about it. Just don't have any more contact with Pennington. Don't get yourself in any more trouble." According to SSgt Hazen, Appellant responded by saying, "I know, I know."

SSgt Hazen testified that he issued a second order after they arrived at the clinic:

> ATC [Assistant Trial Counsel]: . . . At any point during the time you were at the [clinic] with the accused, was his first sergeant there?
>
> WIT [SSgt Hazen]: Yes, sir, he was. He met us there. . . .
>
> Q. Did you give the accused any orders while you were there?
>
> A. Yes, sir. In front of his first sergeant [Senior Master Sergeant Speer], I gave him a

6

> lawful order to have no contact with Airman
> Pennington.

SSgt Hazen added that both Amn Lewis and Senior Master Sergeant Speer heard what he said to Appellant.

The testimony then turned to the details of the communication:

> Q. And how is it that you gave the order?
>
> A. Ninety-nine percent of the time the orders are always the same and it's, "I'm give [sic] you a lawful order to have no contact with the victim." At this time, it was Airman Pennington. "And if he does approach you, you need to contact somebody in your chain of command or contact us, and we'll take care of it right away."
>
> Q. Now, in this particular case, I know that you said, "This is how we do it," but how was it done in this case?
>
> A. The specifics, I'm -- that's what I'm going to say. I said that -- again, it was awhile back and I'm almost positive that's what I said.

SSgt Hazen added that Appellant acknowledged this communication by nodding his head.

According to SSgt Hazen, he issued a third no-contact order while he and Amn Lewis drove Appellant back to the base from the clinic:

> [A]t that time after the test and everything on the way back, he was a little bit more talkative, a little bit more concerned. And I talked to him a little bit more about different things other than the case and got to know him a little bit better. But from

7

that, that's when I said, "Well, stay out of trouble. You seem to be doing okay, everything else you're doing." I didn't know much about the OSI case [involving separate charges], but this was just -- after -- I said, "You could still make a career out of this. Let's not screw up any more, and don't have any more contact with Pennington."

Although he could not remember the exact terms, SSgt Hazen said that Appellant acknowledged the third communication: "[I]t was something to the effect, 'I know. I know. I'm going to stay out of trouble. I'm going to be okay,' and stuff."

Defense counsel began cross-examination by asking SSgt Hazen if he remembered the terms of the order. SSgt Hazen answered, "No, ma'am." In response to further questioning, SSgt Hazen noted that the report of the investigation did not mention that a no-contact order had been issued, and that the order had not been documented until a month after the incident. The defense counsel then turned to the content of the communications:

[Defense counsel]: Your communication with respect to [Appellant] and Airman Pennington did not specify any duration under which your order was in place, did it?

A. No, ma'am, it didn't.

Q. And you can't provide the court or the members any more information about the language that you used in communicating with [Appellant].

8

A. The only one I feel comfortable under oath with is the statement that I gave in front of the emergency room.

Q. And you don't recall the words of that statement to [Appellant].

A: I do feel comfortable saying that what I -- I expressed to [trial counsel], that that's what I said, minus -- maybe changing a word or two.  But that's -- under oath, I will say that I said that.

Q: So you do have a recollection of the words used or you don't.

A: Again, exact words --

Q: Do you have a recollection today of the words used?

A: Yes, ma'am, and that's what I told [trial counsel].

Q: And the gist of that was not to approach Airman Pennington, correct?

A. Yes, ma'am.

. . . .

Q. You never informed [Appellant] that he could be criminally charged with violating the direction that you gave him on that day, correct?

A. Again, I don't think I did.  I might have, but I don't think I did.

SSgt Hazen also acknowledged that he never spoke to Appellant's commander about the no-contact order.  During redirect examination, the prosecution returned to the content of the communication:

9

> Q: Investigator Hazen, to the best of your recollection, what were the words that were communicated from you to the accused in front of his first sergeant?
>
> A. I started with, "In front of your first sergeant, I'm giving you a lawful order to have no contact with Airman Pennington; and if he approaches you, let somebody in your chain of command know or let me know and we'll take care of it as soon as possible."

In response to questions from members of the panel, SSgt Hazen said that he issued no-contact orders about once a week in his capacity as an investigator and that they were never issued in written form. He also said that in the present case, he issued no-contact orders to both Appellant and Amn Pennington on the same day.

Without objection from defense counsel, the military judge instructed the members on the four elements of violating a lawful order:

> [O]ne, that a member of the armed forces; namely, Staff Sergeant Scott Hazen, issued a certain lawful order to have no contact with A1C [Airman First Class] Steven Pennington; two, that the accused had knowledge of the order; three, that the accused had a duty to obey the order; and four, that at Peterson Air Force Base, on or about 4 August 2001, the accused failed to obey the order.
>
> An order, to be lawful, must relate to specific military duty and be one that the member of the armed forces is authorized to give. An order is lawful if it is reasonably necessary to safeguard and protect the morale, discipline, and usefulness of the members of a command and

10

>            is directly connected with the maintenance
>            of good order in the services.  It is
>            illegal if it is unrelated to military duty,
>            its sole purpose is to accomplish some
>            private end, it is arbitrary and
>            unreasonable, or it is given for the sole
>            purpose of increasing the penalty for an
>            offense that it is expected the accused may
>            commit.  You may find the accused guilty of
>            failing to obey a lawful order only if you
>            are satisfied beyond a reasonable doubt that
>            the order was lawful.

## II. JUDICIAL RESPONSIBILITY
## TO DETERMINE THE LAWFULNESS OF AN ORDER

When a servicemember is charged with violation of a lawful order, the legality of the order is an issue of law that must be decided by the military judge, not the court-martial panel. Article 51(b), UCMJ, 10 U.S.C. § 851(b) (2000); United States v. New, 55 M.J. 95, 105 (C.A.A.F. 2001).  We employ a de novo standard of review to assess the rulings of the military judge concerning the lawfulness of the charged order, including his decision to submit the issue of lawfulness to the court-martial panel.  New, 55 M.J. at 100, 106.

An order is presumed to be lawful, and the accused bears the burden of rebutting the presumption.  See United States v. Hughey, 46 M.J. 152, 154 (C.A.A.F. 1997).  The essential attributes of a lawful order include:  (1) issuance by competent authority -- a person authorized by applicable law to give such an order; (2) communication of words that express a specific

11

mandate to do or not do a specific act; and (3) relationship of the mandate to a military duty. See id. at 100-01; Manual for Courts-Martial, United States (2002 ed.) (MCM), pt. IV, ¶ 14.c. (2)(a). In addition, the accused may challenge an order on the grounds that it would require the recipient to perform an illegal act or that it conflicts with that person's statutory or constitutional rights. See MCM, pt. IV, ¶ 14.c. (2)(a)(i), (iv).

The lawfulness of an order, like other issues of law, may involve questions of fact that must be addressed by the military judge for the limited purpose of resolving the issue of law. See Rule for Courts-Martial (R.C.M.) 905(d). The consideration of such factual matters by the military judge in the course of addressing an issue of law is distinct from, and does not preempt, the responsibility of a court-martial panel to address factual matters pertinent to the elements of an offense in the course of returning findings on the issue of guilt or innocence. Compare, e.g., R.C.M. 905(c)(1) (burden of proof when a military judge must resolve a factual issue in the course of deciding a motion), with R.C.M. 920 (instructions to a court-martial panel on findings). Cf. R.C.M. 916(d) discussion (addressing the responsibility for determining factual aspects of lawfulness in the context of the defense of obedience to orders). In cases where direct, local orders are given, the fact-laden nature of

those cases makes it particularly important that the military judge identify factual issues that the members must resolve. In the present case, for example, the military judge recognized that the factual issue of whether an order was given -- that is, whether certain words were communicated to the accused -- involved proof of an element that ultimately would have to be resolved by the members.

When the defense moves to dismiss a charge on the grounds that the alleged order was not lawful, the military judge must determine whether there is an adequate factual basis for the allegation that the order was lawful. In the course of acting on such a motion, if the military judge rules that a specific set of words would constitute a lawful order under a specific set of circumstances, that is a preliminary ruling. The military judge's ruling does not relieve the prosecution of the responsibility during its case-in-chief of proving beyond a reasonable doubt the facts necessary to establish the elements of the offense. See, e.g., MCM, pt. IV, ¶ 16.b. (2).

Our decision in New -- holding that the lawfulness of an order is not an element, but is an issue of law to be resolved by the military judge, not members -- was released approximately six months before Appellant's court-martial. In the present case, the military judge erred in ruling on the motion to dismiss by treating both the issue of lawfulness and the

predicate factual aspects of the lawfulness issue as matters to be resolved by the members. The error is reflected both in his ruling on the motion and in his subsequent submission of the issue of lawfulness to the members.

The Government contends that Appellant was not harmed because the submission of the issue of lawfulness to the members after the military judge ruled on the lawfulness issue gratuitously provided Appellant with a second chance to prevail on the issue. The Government suggests that the military judge relied on the presumption of lawfulness in denying the motion to dismiss, and then simply provided the defense with a second bite at the apple when he submitted the issue of lawfulness to the members.

The Government's approach might have some merit in a case where the issue of lawfulness could be addressed without resolution of significant underlying factual disputes. This is not such a case. Appellant vigorously challenged the issue of lawfulness by emphasizing specific predicate factual questions, such as the uncertainty as to the terms and conditions of the alleged order. The military judge's determination that these questions raised by the Appellant were factual matters to be decided by the panel and his subsequent submission of the lawfulness issue to the panel indicate that the military judge

did not resolve the predicate factual questions before concluding that the charged order was lawful.

Accordingly, we cannot be confident that the issue of lawfulness was resolved by the military judge, as required by New, prior to submission of the issue to the panel. Because there is a distinct possibility that the military judge did not resolve the predicate factual questions necessary to determine the issue of law, his ruling on the lawfulness issue is critically undermined. In acting on the defense motion to dismiss, the military judge's ruling that "the court cannot find as a matter of law the alleged order was unlawful" is far from an affirmative judicial determination that the order was lawful. In this context, there is a significant likelihood that the issue of lawfulness was resolved only by the panel -- a body not trained in the law or empowered to rule on that issue. These circumstances leave us in grave doubt as to the validity of the findings. See Kotteakos v. United States, 328 U.S. 750, 765 (1946).

The same considerations lead us to reject the Government's contention that Appellant waived the issue by not objecting to the pertinent instructions of the military judge on findings. The defense did not acquiesce in the military judge's approach to the issue of lawfulness. As noted above, the defense litigated the motion to dismiss by specifically asking the

military judge to address the factual matters pertinent to the lawfulness of the order.  The military judge indicated that he would not do so and would instead submit the issue to the members.  Once the military judge rejected the defense position and announced that he would submit the issue of lawfulness to the members, there was no need for the defense to repeat its concerns to preserve the issue.

Because we review the issue of lawfulness under a de novo standard, we could bypass the military judge's approach and decide on the basis of the record before us whether the order was lawful.  In view of the significant factual aspects of the issue in the present case, however, we decline to do so.  Under the circumstances of this case, particularly the multiple versions of the order given in varying contexts, the issue of lawfulness should be decided in the first instance by a military judge who takes testimony, observes the witnesses, and weighs the evidence in the course of resolving any factual questions that are predicates to the decision.

## III. CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is reversed as to Additional Charge I, its specification, and the sentence, but is affirmed in all other respects.  The findings as to Additional Charge I and its

16

specification, as well as the sentence, are set aside.  The record of trial is returned to the Judge Advocate General of the Air Force for remand to a convening authority for a rehearing on Additional Charge I, its specification, and the sentence.  If a rehearing on Additional Charge I and its specification is deemed impracticable, the specification may be dismissed and a rehearing on the sentence alone will be conducted.  Thereafter, Articles 66 and 67, UCMJ, 10 U.S.C. §§ 866, 867 (2000), will apply.

FOOTNOTE:

[*] Upon Appellant's petition, our Court specified the following issue: "Whether plain error occurred under United States v. New, 55 M.J. 95 (C.A.A.F. 2001), when the military judge, contrary to the defense request, submitted the question of the lawfulness of the disobeyed order to the members."

United States v. Deisher, No. 04-0555/AF

CRAWFORD, Judge (dissenting):

It is unreasonable to hold that there was prejudicial error in this case.  The military judge implicitly found by a preponderance of the evidence that the order was lawful and then submitted those elements under appropriate instructions to the court members.  The members found that the prosecution had proved all these elements beyond a reasonable doubt.  Thus, Appellant received "two bites of the apple" on the question of the lawfulness of the order -- with the second bite imposing a higher burden of proof on the prosecution when it presented its case to the members.  Surely these procedures inured to the benefit of Appellant.  A finding of guilty is not rendered any less reliable when its lawfulness is determined beyond a reasonable doubt.  Cf. Neder v. United States, 527 U.S. 1, 17 (1999) (determining that "where a reviewing court concludes beyond a reasonable doubt that [an] omitted element [in a jury instruction] was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless").  Because no sound reason has been put forth to establish the unreliability of the findings, I respectfully dissent.

United States v. Deisher, No. 04-0555/AF

BAKER, Judge (dissenting):

I concur in the majority's analytic framework for addressing the lawfulness of an order. As this Court held in United States v. New, 55 M.J. 95 (C.A.A.F. 2001), whether an order is lawful is a question of law for the military judge -- and not the members -- to determine. Before sending a change alleging a violation of a lawful order to the members, a military judge must necessarily make threshold contingent factual conclusions to determine whether the order at issue is lawful.

However, while I agree with the Court's analysis, I respectfully dissent from the Court's decision reversing Additional Charge I rather than resolving the underlying question of lawfulness at this time. In my view, we can and should decide now whether the order Appellant received was lawful. The facts are clear and settled with respect to at least the second instance in which the order was issued. In applying the law to the relevant facts now, we can provide clarity to the law, serve both the Government's and Appellant's interest in finality, and serve the interest of judicial economy.

As the majority acknowledges, "[b]ecause we review the issue of lawfulness under a de novo standard, we could bypass the military judge's approach and decide on the

basis of the record before us whether the order was lawful." Nonetheless, "[i]n view of the significant factual aspects of the issue" the Court declines to do so. The Court identifies as the basis for this statement "the multiple versions of the order given in varying contexts." However, no other "factual aspects" requiring further development are identified that would preclude this Court from deciding the legal question at this time. And particularly, no factual issues are identified with respect to the second issuance of the order.

To start, there is nothing factually unclear about the second issuance of the order. Staff Sergeant (SSgt) Hazen testified that he told Appellant, "In front of your first sergeant, I'm giving you a lawful order to have no contact with Airman [(Amn)] Pennington; and if he approaches you, let somebody in your chain of command know or let me know and we'll take care of it as soon as possible." More specifically, SSgt Hazen testified that he issued the order to Appellant while standing outside the entrance to the emergency room. In addition, the following relevant testimony is in the record and quoted in part in the lead opinion.

> ATC [Assistant Trial Counsel]: . . . At any point during the time you were at the

2

[clinic] with the accused, was his first
sergeant there?

WIT [SSgt Hazen]: Yes, sir, he was.  He met
us there. . . .

Q. Did you give the accused any orders while
you were there?

A. Yes, sir.  In front of his first sergeant
[Senior Master Sergeant Speer], I gave him a
lawful order to have no contact with Airman
Pennington.

. . . .

A.  All right.  Now, I don't know if I got this before
or not, but was anybody there when you gave this
order?

Q.  Yes, sir.  Airman Lewis, who rode with me, was
there.  Sergeant Pecqueur also drove separate.  She
was there; and the first sergeant, at the time Senior
Speer, he was there also.  I gave the order in front
of Senior Speer, and I'm not sure if Sergeant Pecqueur
heard it.  But Ariman Lewis did hear it.

Q. And how is it that you gave the order?

A. Ninety-nine percent of the time the
orders are always the same and it's, "I'm
[giving] you a lawful order to have no
contact with the victim."  At this time, it
was Airman Pennington.  "And if he does
approach you, you need to contact somebody
in your chain of command or contact us, and
we'll take care of it right away."

Q. Now, in this particular case, I know that
you said, "This is how we do it," but how
was it done in this case?

A. The specifics, I'm -- that's what I'm
going to say.  I said that -- again, it was
awhile back and I'm almost positive that's
what I said.

3

. . . .

Q. . . . did the accused acknowledge your order?

A. Yes, sir.  I believe he just nodded his head.
Throughout -- this is based on in front of the
emergency room; but in the vehicle, he said, "I know,
I know" to me . . . .

Emphasis added.

Subsequent examination of SSgt Hazen by defense counsel

proceeded as follows:

Q. And you can't provide the court or the
members any more information about the
language that you used in communicating with
Airman Basic Deisher.

A. The only one I feel comfortable under
oath with is the statement that I gave in
front of the emergency room.

Q. And you don't recall the words of that
statement to [Appellant].

A: I do feel comfortable saying that what I
-- I expressed to [trial counsel], that
that's what I said, minus -- maybe changing
a word or two.  But that's -- under oath, I
will say that I said that.

In response to questions from members of the panel, SSgt

Hazen said that he issued no-contact orders about once a

week in his capacity as an investigator and that they were

never issued in written form.  He also said that in the

present case, he issued no-contact orders to both Appellant

and Amn Pennington on the same day.

4

In general, military judges are better situated to rule in the first instance on questions of lawfulness than appellate judges for the obvious reasons that they may ask questions of witnesses, observe their demeanor, and weigh their credibility.  However, in this case, the Court does not identify any outstanding factual questions necessary to resolve the lawfulness of this order.  Moreover, although there might arguably remain factual questions regarding the first and third occasions on which SSgt Hazen gave the no-contact order, in all three cases the substance was consistent.  So this is not a situation where the order at the clinic was contradicted or clouded by the other orders.  The dispute is over the lawfulness of the order and whether or not as a matter of factual and legal sufficiency, Appellant heard and understood the order at least once.

Further, I do not see how the facts are going to be developed further with respect to the second rendering of the order.  The key witness, the investigator, testified in detail, and was very careful with his words noting that he was under oath and recalling where he gave the order and who was present.  He acknowledged that he could not remember the exact words used each time he gave the order.  And, he stated that in accordance with his practice he did not record the order in writing until after he was asked to

do so by the trial counsel in anticipation of prosecution.

Nonetheless, with respect to the second order, SSgt Hazen

stated that in ninety-nine percent of the cases in which he

gives a no-contact order he uses the same language and that

under oath he was comfortable saying that he was almost

positive he used the same language in this instance.

Finally, this is not a case where the error deprived

Appellant of presenting his strongest argument to the

members or the military judge.  The military judge was on

the right track when he concluded that:

> [B]ased on the proffered facts, the court cannot
> find as a matter of law the alleged order was
> unlawful.  The defense motion is essentially an
> argument that the evidence is insufficient to
> establish either that an order was given or that
> it was lawful.  These are questions of fact for
> the members to determine.

However, in using the sort of reverse negative that lawyers

specially favor, we cannot be sure whether the military

judge found the order lawful, stating that he could not

find that the order"was unlawful".  Similarly, we cannot

know whether "cannot find . . . the alleged order

wasunlawful" means something else.

Further, the military judge appears to have referred

not only the elemental facts to the members to determine,

but also appears to have referred the question of

lawfulness to the members as well.  In light of New, this

6

amounted to plain error. But rather than Appellant being prejudiced here, he appears to have benefited from an opportunity for the members, albeit erroneously, as well as the military judge, to evaluate the lawfulness of the order he received.

In deferring the issue, the majority's view is contradictory and effectively sets apart the issue of lawfulness as a distinct analytic question, unique unto itself. On the one hand, the suggestion is that the question is not really a legal question because this Court feels it cannot resolve it even with a record as plain as the one before us. On the other hand, neither is it a factual question because the Court has found legal error in the military judge's submission of the question to the members. Thus, the majority converts what was a straightforward legal issue into a jurisprudential hybrid. I do not see the need for this analytic innovation, which may produce uncertainty regarding the enforcement of the most elemental of military traditions: obedience to a lawful order. Readers of the majority's opinion might well wonder whether the Court finds the question of lawfulness complex. They may wonder what additional facts are required to address lawfulness. Or, it may seem uncertain whether an order must be issued three times in order to be

7

lawful one time.  Is there something more a military policeman should do to ensure he or she has conveyed a lawful order?  Is there something more an infantry platoon sergeant should do?  For the reasons stated, the parties and the law would be better served were we to answer the question before the Court at this time.  Therefore, I respectfully dissent.