UNITED STATES, Appellee

v.

Jesse I. RANNEY, Technical Sergeant
U.S. Air Force, Appellant

No. 08-0596

Crim. App. No. S31046

United States Court of Appeals for the Armed Forces

Argued February 10, 2009

Decided April 14, 2009

RYAN, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN, J., joined. STUCKY, J. filed a separate opinion, dissenting in part, in which BAKER, J., joined.


Counsel


For Appellant: Captain Tiffany M. Wagner (argued); Major Shannon A. Bennett (on brief).


For Appellee: Captain Naomi N. Porterfield (argued); Colonel Gerald R. Bruce and Major Jeremy S. Weber (on brief); Major Matthew S. Ward.


Military Judge: Steven A. Hatfield


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

On the morning of April 22, 2005, Appellant was involved in a car accident while driving U.S. Marine Corps (Marine Corps) Lance Corporal (LCpl) M from his off-base home to Kadena Air Base on Okinawa Island, Japan. The accident was especially unfortunate for Appellant because it brought to light the fact that he was simultaneously disobeying two orders: (1) an order under the signature of Lieutenant Colonel (Lt. Col.) D, the Base Traffic Review Officer, revoking Appellant's driving privileges; and (2) an order from Marine Corps Gunnery Sergeant (GySgt) F, Detachment Chief at Armed Forces Network (AFN) Okinawa, requiring Appellant to cease his "unprofessional relationship" with LCpl M.

Contrary to Appellant's pleas, members sitting as a special court-martial found Appellant guilty of willfully disobeying a lawful order of a superior commissioned officer and of willfully disobeying the lawful order of a noncommissioned officer, in violation of Articles 90 and 91, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 890, 891 (2000). The panel sentenced Appellant to reduction to the enlisted grade of E-3, forfeiture of $400 per month for three months, confinement for ninety days, a bad-conduct discharge, and a reprimand. The convening authority approved the sentence as adjudged and the United States Air Force Court of Criminal Appeals (CCA) affirmed

the findings and sentence.  United States v. Ranney, No. ACM
S31046, 2008 CCA LEXIS 138, at *14-*15, 2008 WL 901504, at *5
(A.F. Ct. Crim. App. Mar. 31, 2008).

We granted Appellant's petition to determine whether the
evidence was legally sufficient to support the finding of guilt
for violating Article 90, UCMJ, and whether GySgt F's order was
a lawful order as required by Article 91, UCMJ.[1]  For the reasons
given below, we affirm the decision of the CCA, except with
respect to the finding of guilty to Charge I, willfully
disobeying a superior commissioned officer.  As to that offense,
we affirm a finding of guilt to the lesser included offense of
failure to obey an order, in violation of Article 92, UCMJ, 10
U.S.C. § 892 (2000).

## I.  Violation of Article 90, UCMJ

### A.  Background

In September 2004, the Okinawa Security Forces issued
Appellant an order revoking his driving privileges after

---

[1] The Court granted review of the following two issues:

I.  WHETHER THE EVIDENCE IS LEGALLY SUFFICIENT TO
SUPPORT THE FINDING OF GUILTY FOR DISOBEYING A LAWFUL
COMMAND WHERE THERE WAS NO EVIDENCE THAT THE COMMAND
WAS DIRECTED PERSONALLY TO APPELLANT OR THAT APPELLANT
KNEW IT WAS FROM A SUPERIOR COMMISSIONED OFFICER.

II.  WHETHER THE ORDER IN THE SPECIFICATION OF CHARGE
II WAS A LAWFUL ORDER WHEN THE EVIDENCE INDICATED THE
ORDER'S PURPOSE WAS TO ACCOMPLISH SOME PRIVATE END.

Appellant was detained for drunk-driving.  The order was a form letter under the signature of Lt. Col. D, who testified at trial that the Security Forces issued such orders automatically without his personal involvement.  Lt. Col. D reviewed orders revoking driving privileges only if they were appealed by the military member receiving the order.

Appellant later submitted such an appeal in the form of a request seeking reinstatement of limited driving privileges.  After reviewing the original drunk-driving offense and receiving recommendations from the Security Forces and the base judge advocate, Lt. Col. D personally issued a memorandum denying Appellant's request.  Although Appellant signed the memorandum acknowledging that his driving privileges remained revoked, he chose to operate a vehicle and was subsequently involved in car accident.  For driving a vehicle after having his driving privileges revoked, a special court-martial convicted Appellant of one specification of willfully disobeying a superior commissioned officer in violation of Article 90, UCMJ.

## B.  Discussion

"The test for legal sufficiency requires appellate courts to review the evidence in the light most favorable to the Government.  If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient."  United States v. Brooks, 60

M.J. 495, 497 (C.A.A.F. 2005) (citing United States v. Byers, 40

M.J. 321, 323 (C.M.A. 1994); United States v. Turner, 25 M.J.

324, 324 (C.M.A. 1987)).

The elements of the offense of willfully disobeying a

superior commissioned officer are:

> (a)  That the accused received a lawful command from a
> certain commissioned officer;
> (b)  That this officer was the superior commissioned
> officer of the accused;
> (c)  That the accused then knew that this officer was
> the accused's superior commissioned officer; and
> (d)  That the accused willfully disobeyed the lawful
> command.

Manual for Courts-Martial, United States pt. IV, para. 14.b(2)

(2005 ed.) (MCM).  The MCM further explains that "[t]he order

must be directed specifically to the subordinate.  Violations of

regulations, standing orders or directives, or failure to

perform previously established duties are not punishable under

this article, but may violate Article 92."[2]  MCM pt. IV, para.

14.c(2)(b).

In Byers, this Court considered a similar case in which the

appellant received an order in the form of a routine

administrative sanction for a traffic offense.  40 M.J. at 323.

That order was issued by a staff officer in the name of a

lieutenant general, but no evidence established that the

---

[2] "Although MCM explanations of offenses are not binding on this
Court, they are generally treated as persuasive authority, to be
evaluated in light of this Court's precedent."  United States v.
Miller, 67 M.J. 87, 89 (C.A.A.F. 2008) (citations omitted).

lieutenant general "did anything to lift his routine order 'above the common ruck,'" or that he personally issued the order.  Id. (quoting United States v. Loos, 4 C.M.A. 478, 480, 16 C.M.R. 52, 54 (1954)).  The Byers Court ruled that the evidence, "even when viewed in the light most favorable to the prosecution, fails to establish a direct and personal order from [the lieutenant general] which, when disobeyed, was a 'personal affront to his dignity.'"  Id. at 323-24 (quoting United States v. Keith, 3 C.M.A. 579, 583, 13 C.M.R. 135, 139 (1953)).

In this case the Government charged Appellant with willfully disobeying "a lawful command from [Lt. Col. D], . . . to not drive for one year, or words to that effect."  Charge Sheet, United States v. Ranney, No. 08-0596 (Aug. 31, 2005) [hereinafter Charge Sheet].  Two letters were issued to Appellant under Lt. Col. D's signature regarding Appellant's driving privileges:  the original September 2004 order revoking privileges for one year and the April 13, 2005, memorandum responding to Appellant's written request for limited driving privileges.  That memorandum states:  "On 4 September 2004, you were found to be operating a motor vehicle while under the influence of alcohol.  In accordance with 18 WGI 31-204, para 2.10, Motor Vehicle Traffic Supervision, and supplements thereto, your driving privileges on Okinawa and all Air Force related properties are hereby limited."  Memorandum from Lt.

6

Col. D, Deputy Commander, 18th Mission Support Group, to TSgt Ranney at 1 (Apr. 13, 2005). The memorandum clarified that there were no exceptions to the limitation and that no driving privileges were being reinstated. Id.

Under Byers, Appellant's failure to obey the original September 2004 order does not qualify as a violation of Article 90, UCMJ. The Security Forces issued the order under the signature, and with the authority, of Lt. Col. D, but without his personal involvement or knowledge. It was not a direct and personal order, and nothing lifted the routine action -- the result of an administrative process automatically triggered by Appellant's drunk-driving conviction, and executed by form letter -- "above the common ruck." Appellant's disobedience of that order was thus legally insufficient to sustain a conviction under Article 90, UCMJ. Byers, 40 M.J. at 323-24.

Nor does the April 13, 2005, memorandum change the legal landscape. While that memorandum has none of the Byers problems that afflict the September 2004 order -- Lt. Col. D personally reviewed Appellant's case and issued the memorandum specifically to Appellant -- it does not contain the lawful command Appellant was charged with willfully disobeying. See Charge Sheet (charging Appellant with disobeying an order "to not drive for one year, or words to that effect"). The April 2005 memo, even when viewed in the light most favorable to the Government as an

7

order not to drive,[3] restricted Appellant's privileges only from April 13 until September 4 -- a period of less than five months. It was neither an order "to not drive for one year," nor "words to that effect."

Finally, we reject the dissent's suggestion that Lt. Col. D's April 13, 2005, memorandum "ratified" the original September 2004 order and thereby transformed it into the lawful command of a superior officer for the purposes of Article 90, UCMJ. United States v. Ranney, __ M.J. __ (2-3) (C.A.A.F. 2009) (Stucky, J., dissenting in part). Although Lt. Col. D personally reviewed Appellant's case and issued a memorandum continuing the suspension of Appellant's driving privileges, that action neither cured the lack of personal involvement afflicting the September 2004 order nor overcame the limitations this Court set forth in Byers. Lt. Col. D's actions seven months after the September 2004 order cannot be retroactively bootstrapped to elevate what was otherwise a routine administrative sanction "above the common ruck." We disagree that the contract principle of ratification can be used to transform an automatic and routine driving restriction into the lawful command of a superior commissioned officer, after the fact, in order to create additional criminal liability.

---

[3] And it can just as easily be construed as nothing more than a memorandum reflecting a decision not to rescind the order not to drive.

8

### C.  Conclusion

We hold that the evidence was legally insufficient to support a finding of guilty of willfully disobeying a superior commissioned officer and set aside the finding of guilt to Charge I.  The evidence does, however, support all of the elements of the lesser included offense of failure to obey a lawful order.  See MCM pt. IV, para. 14.d(3)(a) (listing Article 92, UCMJ, as a lesser included offense); Article 92, UCMJ ("Any person subject to this chapter who . . . having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order . . . shall be punished as a court-martial may direct."); Byers, 40 M.J. at 324 (affirming the lesser included offense of failure to obey a lawful order where the evidence was legally insufficient to support a violation of Article 90, UCMJ).

### II.  Violation of Article 91, UCMJ

### A.  Background

At the time of the conduct underlying Charge II, Appellant was an Air Force Technical Sergeant (E-6) assigned to AFN Okinawa, an office manned by members of both the Marine Corps and the Air Force.  Appellant was supervised by the Detachment Chief, Marine Corps GySgt F (E-7).  GySgt F testified that Appellant was maintaining an "unprofessional relationship" with LCpl M (E-3), a female Marine who worked in a different section

of AFN from Appellant and who was neither supervised by nor within the chain of command of Appellant.

After learning of the relationship between Appellant and LCpl M, GySgt F issued a written order to Appellant. The order stated:

> Since you are a Technical Sergeant, and a leading NCO in the detachment, in accordance with AFI 36-2909, I consider this an unprofessional relationship. To ensure the good order and discipline of this unit, you are herby ordered:
>
> Cease the offensive portion of the relationship with [LCpl M]. "Offensive," as outlined in AFI 36-2909, includes shared living accommodations, vacations, transportation, or off-duty interests on a frequent or recurring basis in the absence of any purpose or organizational benefit. Your relationship with LCpl [M] will be on a strictly profesional [sic] level.

Memorandum from GySgt F, Detachment Chief, to TSgt Ranney at 1 (Mar. 9, 2005) [hereinafter March 9 Order]. GySgt F gave the written order directly to Appellant, who signed the memorandum, indicating his receipt and understanding of the order and the procedures for appealing it.

Despite the order, Appellant continued his relationship with LCpl M. LCpl M testified that on the evening of April 21, 2005, she met Appellant at the enlisted club. They danced, played pool, and hung out together until shortly before midnight, at which time they left the club and retired to Appellant's off-base housing. The next morning, while driving LCpl M back to Kadena Air Base for physical training, Appellant

10

was involved in a car accident.

For willfully disobeying GySgt F's order, a special court-martial convicted Appellant of one specification of willfully disobeying a superior noncommissioned officer in violation of Article 91, UCMJ.

## B.  Discussion

Article 91, UCMJ, like Article 90, UCMJ, makes punishable disobedience only of lawful commands.  Article 91, UCMJ ("Any . . . enlisted member who . . . willfully disobeys the lawful order of a warrant officer, noncommissioned officer, or petty officer . . . shall be punished as a court-martial may direct."); see MCM pt. IV., para. 15.c(4) (incorporating the lawfulness requirement from Article 90, UCMJ, to Article 91, UCMJ).  This Court considers the legality of an order de novo. United States v. Mack, 65 M.J. 108, 112 (C.A.A.F. 2007); United States v. Deisher, 61 M.J. 313, 317 (C.A.A.F. 2005).  "An order is presumed to be lawful, and the accused bears the burden of rebutting the presumption."  Deisher, 61 M.J. at 317. Nevertheless, an order purporting to regulate personal affairs is not lawful unless it has a military purpose.  United States v. Padgett, 48 M.J. 273, 276 (C.A.A.F. 1998); see Deisher, 61 M.J. at 317 ("The essential attributes of a lawful order include . . . [the] relationship of the mandate to a military duty.") (citing MCM pt. IV, para. 14.c(2)(a)).  In this case, Appellant

challenges whether GySgt F's order had any relationship to military duty.

Appellant asserts that GySgt F issued the order to accomplish some private end and that the order had "nothing to do with a military duty." Brief in Support of Petition Granted at 11-13, United States v. Ranney, No. 08-0596 (C.A.A.F. Dec. 8, 2008) [hereinafter Brief in Support of Petition Granted]. If true, this would rebut the presumption that the order was lawful. See Padgett, 48 M.J. at 276-77 (holding that an order regulating personal affairs must have a military purpose to be lawful); MCM pt. IV, para. 14.c(2)(a)(iii) (stating that the requirement of a relationship to military duty precludes punishment for "[d]isobedience of an order which has for its sole object the attainment of some private end"). Appellant does not, however, indicate what private end GySgt F sought to accomplish by issuing the order. Moreover, Appellant admits both that GySgt F "wanted to ensure that the NCO's enforced the regulations on younger marines who were faced with more restrictions," and that GySgt F's "concerns about good order and discipline within the enlisted force are certainly appropriate in the abstract." Brief in Support of Petition Granted at 12, 14. Appellant argues that the lack of specific evidence in the record of trial demonstrating that Appellant's relationship with LCpl M had a negative impact on the good order and discipline of

the AFN detachment rebuts the presumption that GySgt F's order was legal. Id. at 14. We disagree.

GySgt F's order to Appellant explicitly stated that it was issued "[t]o ensure the good order and discipline" of the AFN detachment. March 9 Order. In the context of a multi-service unit, GySgt F considered the personal relationship between Appellant and LCpl M to be an "unprofessional relationship." Id. GySgt F testified that he believed that Appellant's (a noncommissioned officer) and LCpl M's relationship would compromise the detachment's noncommissioned officers' ability to enforce the various restrictions placed on junior Marine enlisted members. GySgt F also testified that although the relationship had not yet caused any specific problems within the unit, he believed that it had the potential to become a problem over time.

We agree with the Court of Criminal Appeals that there was a legally sufficient nexus between GySgt F's order and a military duty, namely maintaining the discipline and morale of the AFN detachment. See United States v. Moore, 58 M.J. 466, 468 (C.A.A.F. 2003) (stating that military duty includes "'all activities reasonably necessary to accomplish a military mission, or safeguard or promote the morale, discipline, and usefulness of members of a command and directly connected with the maintenance of good order in the service'") (quoting MCM pt.

IV, para. 14.c.(2)(a)(iii)). GySgt F's order explicitly referenced AFI 36-2909, an instruction addressing the impact of personal relationships as "matters of official concern," and specifically stated that the purpose of the order was "[t]o ensure the good order and discipline of this unit." In the absence of any evidence that the order was in fact issued for a private end, and with a sufficient nexus between the mandate and a stated military duty -- good order and discipline -- extant in the record, the presumption that the order was lawful remains intact.

## C. Conclusion

We conclude that Court of Criminal Appeals correctly upheld Appellant's conviction for a violation of Article 91, UCMJ.

## III. Decision

The decision of the United States Air Force Court of Criminal Appeals is reversed with respect to Charge I (willfully disobeying a superior commissioned officer) and with respect to the sentence. The finding of guilty to that offense is set aside and that allegation is dismissed. We affirm a finding of guilty to the lesser included offense of failure to obey an order, in violation of Article 92, UCMJ, 10 U.S.C. § 892 (2000). The portion of the lower court's decision affirming a conviction for violation of Article 91, UCMJ, 10 U.S.C. § 891 (2000), is affirmed. The record is returned to the Judge Advocate General

of the Air Force for remand to the Court of Criminal Appeals for reassessment of the sentence based on Appellant's convictions for violations of Articles 91 and 92, UCMJ, or to order a rehearing on sentence.

United States v. Ranney, No. 08-0596/AF

STUCKY, Judge, with whom BAKER, Judge, joins (dissenting in part):

I respectfully dissent from that part of the majority's decision that holds the evidence was not legally sufficient to affirm Appellant's conviction for disobeying the lawful command of his superior commissioned officer. Article 90, UCMJ, 10 U.S.C. § 890 (2000).

In September 2004, after Appellant was detained for driving while under the influence of alcohol, and, following a base instruction, Security Forces issued him an order restricting his driving privileges. As noted by the majority, the order was a form letter with the preprinted signature of Lieutenant Colonel (Lt Col) Dennis P. Delaney, the base traffic reviewing officer (BTRO), issued to Appellant without the direct knowledge or specific approval of Lt Col Delaney. The majority correctly holds that, as the officer did not personally direct the order to Appellant, the September 2004 order standing alone cannot be the basis of a conviction for disobeying a superior commissioned officer. United States v. Byers, 40 M.J. 321, 323 (C.M.A. 1994).

But the majority goes further and holds that the April 13, 2005, memorandum, in which Lt Col Delaney personally denied reinstatement of Appellant's driving privileges, does not "change the legal landscape." I disagree. In the April 13,

2005, memorandum, which was in response to Appellant's request for reinstatement of limited driving privileges, Lt Col Delaney specifically referenced the September 4, 2004, incident of driving under the influence of alcohol and personally refused to reinstate those driving privileges. By doing so, he ratified the original September 2004 order restricting Appellant's driving privileges for one year.

Ratification is the "[c]onfirmation and acceptance of a previous act, thereby making the act valid from the moment it was done." Black's Law Dictionary 1289 (8th ed. 2004). Ratification is a concept that is not foreign to military law or to this Court. See, e.g., United States v. Thompson, 46 M.J. 472, 475 (C.A.A.F. 1997) (concluding that "the convening authority's determination that the two periods of delay were excludable from the Government's accountability for speedy-trial purposes amounted to a ratification of the investigating officer's grant of the defense-delay requests, rather than an after-the-fact rationalization"); United States v. Brown, 39 M.J. 114, 118 (C.M.A. 1994) (accepting "that any error in the referral of appellant's case to court-martial by Captain Holly was cured by the actual commander's ratification" of the referral by approving the sentence); United States v. Scott, 11 C.M.A. 655, 657, 29 C.M.R. 471, 473 (1960) (noting that parents

who took no action to notify Army officials that their son had enlisted as a minor without their permission ratified his enlistment).

By endorsing the April 13 memorandum, Appellant acknowledged receipt and understanding that Lt Col Delaney had personally sustained the one-year restriction on Appellant's driving privileges.  Yet less than two weeks later, and still well within the one-year term of the restriction, Appellant chose to drive a motor vehicle and was involved in an accident. Lt Col Delaney's April 13 memorandum lifted the September 4, 2004, order "'above the common ruck.'"  Byers, 40 M.J. at 323 (quoting United States v. Loos, 4 C.M.A. 478, 480, 16 C.M.R. 52, 54 (1954)).  Therefore, I would affirm Appellant's conviction for disobeying the order of a superior commissioned officer under Article 90, UCMJ.