# CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PEDE, COOK, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 CHAD D. BARTSH**
**United States Army, Appellant**

ARMY 20111104

Headquarters, III Corps and Fort Hood
Kirsten V.C. Brunson, Military Judge
Colonel Stuart W. Risch, Staff Judge Advocate

For Appellant:  Major Jacob D. Bashore, JA; Captain Kevin F. Sweeney, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Major Elisabeth A. Claus, JA; Captain Sean Fitzgibbon, JA (on brief).

31 December 2013

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

Judge HAIGHT:

A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of absence without leave, failure to repair, willfully disobeying a superior commissioned officer, and larceny of a motor vehicle, in violation of Articles 86, 90, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 890, 921 (2006) [hereinafter UCMJ].  The military judge sentenced appellant to a bad-conduct discharge, to be confined for two years, forfeiture of all pay and allowances, and to be reduced to the grade of E-1.  The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for ten months, forfeiture of all pay and allowances, and a reduction to the grade of E-1.

BARTSH— ARMY 20111104

This case is before us for review under Article 66, UCMJ. Appellant raises two assignments of error to this court, one of which merits discussion and relief.

## BACKGROUND

The Specification of Charge II alleged that appellant, "having received a lawful command from Captain J.B., his superior commissioned officer, then known by [appellant] to be his superior commissioned officer, to not leave the Fort Hood installation, an order which it was his duty obey, did, at or near Fort Hood, Texas, on or about 5 July 2011, willfully disobey the same." At the very beginning of trial, even before the announcement of the general nature of the charges and arraignment, the military judge summarized a previous Rule for Courts-Martial [hereinafter R.C.M.] 802 conference:

> MJ: [W]e talked about the maximum punishment on The Specification of Charge II. Captain J.M. [trial defense counsel] indicated that, while it was charged as violating a lawful order from a superior commissioned officer, the actual offense was breaking restriction, which, as I understand, government agrees with?
>
> TC: Yes, Your Honor.
>
> MJ: Okay. So the maximum punishment for that offense will be that for breaking restriction.

While the maximum punishment for the crime of breaking restriction under Article 134, UCMJ, was applied, appellant pleaded guilty to and stands convicted of willful disobedience under Article 90, UCMJ. Appellant now raises the following assignment of error:

> THE ULTIMATE OFFENSE DOCTRINE REQUIRES THAT THIS COURT DISMISS THE SPECIFICATION OF WILLFUL DISOBEDIENCE OF A COMMISSIONED OFFICER WHERE THE GOVERNMENT IMPROPERLY ESCALATED THE SEVERITY OF THE MINOR OFFENSE OF BREAKING RESTRICTION.

## LAW AND DISCUSSION

This particular fact pattern, where an order to remain within certain geographic limits is disobeyed, arises fairly often and seems to create a certain amount of confusion regarding the proper application of the "ultimate offense" doctrine. There are two relevant aspects to this doctrine, the first being what

2

offense should be charged and the second being what maximum punishment should be applied.

First, as it pertains to the charging decision in these instances of disobedience of an order imposing geographical restraint, we find no mandate in either policy or precedent that would require the government to charge breaking restriction as opposed to disobedience under Article 90, 91, or 92, UCMJ, as the facts may dictate. To the contrary, as the Supreme Court has long recognized, even if the same conduct could be charged under different statutes and may satisfy the elements of different crimes, there is no requirement that the government charge and sentence under the statutory provision with the lesser punishment. *United States v. Batchelder*, 442 U.S. 114 (1979). These choices are matters well within the government's discretion. Furthermore, as breaking restriction is a Presidentially-defined offense under Article 134, UCMJ, there is no concern that the crime of breaking restriction preempts a disobedience charge laid under Article 90, 91, or 92 of the UCMJ.[*]

Second, as it pertains to the appropriate maximum punishment, the "ultimate offense" doctrine does not alter the fact that the President is the one who directs the maximum limits prescribed for offenses under the UCMJ. UCMJ art 56. Accordingly, if the elements of willful disobedience of a lawful order are satisfied, the maximum punishment for that particular Article 90, UCMJ, offense includes a dishonorable discharge, total forfeitures, and confinement for five years. *Manual for Courts-Martial*, *United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶14.e.(2). Our superior court has provided very clear and concise guidance on the question of whether a lesser maximum punishment can be applied. "Congress delegated to the President the power to prescribe the maximum punishment for violations of the Uniform Code, and such delegation includes the power to set limits on those punishments. Footnote 5 specifically applies only to Article 92 violations, and we have no power to extend it to violations of other Articles of the Code." *United States v. Landwehr*, 18 M.J. 355, 356 (C.M.A. 1984) (internal citations omitted).

Failure to obey an order from a superior under Article 92, UCMJ, can be a lesser included offense of the greater offense of willful disobedience. The maximum punishment for a mere failure to obey a lawful order other than a general order or regulation includes a bad-conduct discharge, total forfeitures, and confinement for six months. *MCM*, pt. IV, ¶16.e.(2). However, the *MCM* has long contained a provision, found in a footnote renumbered throughout the years, regarding the maximum punishment for certain Article 92, UCMJ, offenses.

---

[*] This case does not require us to determine the propriety of charging decisions opting for disobedience over other possible offenses under Articles 80-132, UCMJ. *See, e.g.*, *United States v. Peaches*, 25 M.J. 364 (C.M.A. 1987).

> [T]he punishment set forth does not apply in the following cases: if in the absence of the order or regulation which was violated or not obeyed the accused would on the same facts be subject to conviction for another specific offense for which a lesser punishment is prescribed; or if the violation or failure to obey is a breach of restraint imposed as a result of an order.  In these instances, the maximum punishment is that specifically prescribed elsewhere for that particular offense.

*MCM* (2008 ed.), pt. IV, ¶16.e.(2) (note).  This sentence restriction serves to alleviate the concern of escalating the punishment for disobedience beyond that permitted for the "ultimate offense" involved.  *United States v. Quarles*, 1 M.J. 231, 232 (C.M.A. 1975).

Here, appellant was charged with the willful disobedience of an order revoking his pass privileges and directing him not to leave the Fort Hood military installation.  The military judge listed the appropriate elements and defined "willful disobedience" as "an intentional defiance of authority."  However, the factual basis provided by appellant during the providence inquiry is only sufficient to support a finding of guilty to failure to obey under Article 92(2), UCMJ.

Appellant's company commander, on 22 June 2011, issued a written order to appellant not to leave Fort Hood.  Regarding his disobedience to this order, appellant had the following dialogue with the military judge:

> ACC:  On 5 July 2011, I left the Fort Hood installation to get a fast food – to get fast food takeout.  I knew Captain B's ordered – order was still in effect on 5 July 2011 and I chose to violate his order to get food.  After getting the food, I immediately returned to the Fort Hood installation.
>
> I got the food because it was after midnight and I had slept through most of the day.  I recognize that I could have found a better way to feed myself than breaking the restriction.
>
> MJ:  So basically, you say nothing on post was open?
>
> ACC:  Yes, ma'am.
>
> MJ:  Okay.  And so you needed to eat, so you felt at the time – you chose to go off and get something to eat rather than find another way to deal with it?

> ACC: Yes, ma'am.
>
> MJ: Okay. Do you believe you did have other options other than leaving post?
>
> ACC: There was a 24-hour shoppette, ma'am, but in the same order that he gave me, I was not allowed to go there because they serve alcohol, ma'am.

The nature of the disobedience as contemplated in Article 90, versus that of Article 92, is markedly different. According to the *MCM*, "'Willful disobedience' is an intentional defiance of authority." *MCM*, pt. IV, ¶14.c.(2)(f). "Failure to comply with an order through heedlessness, remissness, or forgetfulness is not a violation [of Article 90], but may violate Article 92," UCMJ. *Id.* This defiant brand of disobedience has been described as a "personal affront to [the issuing authority's] dignity," *United States v. Byers*, 40 M.J. 321, 324 (C.M.A. 1994) (citation omitted), and an "express defiance . . . [amounting] to a direct attack on the integrity of any military system." *United States v. Pettersen*, 17 M.J. 69, 72 (C.M.A. 1983) (citation omitted).

The providence inquiry in this case does not sufficiently establish that appellant's disobedience** went beyond heedlessness and rose to the level of willful defiance. To the contrary, appellant's explanation actually reveals he was attempting to choose the lesser of two evils when he decided to violate one aspect of the order by going off post but abiding by another aspect of the same order by not entering an establishment that served alcohol. Furthermore, appellant's disobedience did not occur right on the heels of the order, was not committed in the presence of his chain of command, and did not persist as appellant "immediately" returned to Fort Hood. Accordingly, with respect to the charge of willful disobedience, we will affirm only a finding of guilty to the lesser included offense of failure to obey an order in violation of Article 92, UCMJ. *See United States v. Ranney*, 67 M.J. 297, 298-99 (C.A.A.F. 2009); *United States v. Wartsbaugh*, 21 U.S.C.M.A. 535, 541, 45 C.M.R. 309, 315 (1972).

The Article 90, UCMJ, conviction has now been reduced to a conviction under Article 92, UCMJ. Accordingly, applying the lesser maximum punishment prescribed for breaking restriction to appellant's crime of disobedience, now in violation of Article 92 as opposed to Article 90, UCMJ, is now wholly appropriate. This application of a lesser maximum punishment is precisely what the military judge did in this case, albeit she arrived at this conclusion via a different analytical path.

**Corrected

## CONCLUSION

The finding of guilty to the Specification of Charge II is set aside. However, we affirm a finding of guilty to the lesser included offense of failure to obey an order in violation of Article 92(2), UCMJ. The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted, and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated in *United States v. Winckelmann*, ___ M.J.___, slip. op. at 12-13 (C.A.A.F. 18 Dec. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we first find no dramatic change in the penalty landscape or exposure which might cause us pause in reassessing appellant's sentence as the military judge applied the reduced maximum punishment of breaking restriction to the disobedience offense. Second, appellant pleaded guilty in a judge-alone court-martial. Third, we find the nature of the remaining offenses captures the gravamen of the original charges, and the significant circumstances surrounding appellant's conduct remain admissible and relevant to the remaining offenses. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

After reassessing the sentence and the entire record, the sentence is AFFIRMED. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

Chief Judge PEDE and Senior Judge COOK concur.

FOR THE COURT:

ANTHONY O. POTTINGER
Acting Clerk of Court

6